## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JANE DOE, Individually and on behalf of all others similarly situated, | ) ) ) | Case No. _____ |
| | ) | (Trial Court of Massachusetts, |
| Plaintiff, | ) | Superior Court, Suffolk County, |
| | ) | C.A. No. 2384CV00174-BLS1) |
| v. | ) | |
| | ) | DEFENDANT'S NOTICE OF |
| STEWARD HEALTH CARE SYSTEM LLC, | ) | REMOVAL UNDER |
| | ) | 28 U.S.C. § 1442(a)(1) |
| Defendant. | ) | |
| | ) | |

## <u>NOTICE OF REMOVAL</u>

Defendant Steward Health Care System LLC ("Steward") hereby provides this Notice of Removal pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1).

Steward owns and operates hospitals and provides medical care to patients. As such, Steward has been subject to the federal government's directives to build a nationwide health information technology infrastructure. The Complaint filed by plaintiff Jane Doe ("Doe") challenges the legality of actions Steward has taken in connection with pursuing the government's directives. This case is therefore subject to removal under 28 U.S.C. § 1442(a)(1).

Indeed, other district courts have allowed removal by healthcare institutions like Steward defending against similar allegations. *See*, *e.g.*, *Doe I v. UPMC*, No. 2:20-cv-359, 2020 WL 4381675 (W.D. Pa. July 31, 2020); *Doe v. ProMedica Health Sys., Inc.*, No. 3:20 CV 1581, 2020 WL 7705627 (N.D. Ohio Oct. 30, 2020).

In further support of removal, Steward provides the following "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a).

1

## NATURE OF THE CASE

### Steward's Websites

1.      On or about January 23, 2023, Doe filed a putative class action Complaint against Steward in the Superior Court of the Commonwealth of Massachusetts for the County of Suffolk, Case No. 2384CV00174-BLS1.

2.      Doe's Complaint asserts claims for Violation of the Massachusetts Wiretap Act (G.L. c. 272, § 99), Violation of Massachusetts Privacy Statutes (G.L. c. 214 § 1B, and G.L. c. 111, § 70E), and Breach of Fiduciary Duty.

3.      Doe alleges that Steward "is a private physician-owned healthcare network" and "operates 10 hospitals in Massachusetts."  Complaint, ¶¶ 12, 19.

4.      Doe alleges that Steward "operates websites for its various medical facilities through which Steward patients book appointments, describe symptoms, and communicate highly sensitive personal medical information intended only for their doctors and health service professionals." *Id.*, ¶ 1 (emphasis in original).

5.      Doe alleges that, "[u]nbeknownst to the patients who use its medical websites, Steward shares patients' private protected health information ('PHI') and individually identifiable health information ('IIHI') with Meta Platforms, Inc.'s social media application, Facebook, and with Google." *Id.*, ¶ 2.  According to Doe,

> Steward has deployed throughout its medical website system both Meta Pixel and Google Analytics, invisible programming code that tracks users' actions as they navigate through the medical website.
>
> Meta Pixel and Google Analytics are automatic re-routing programs. Meta Pixel causes the contents of patient communications exchanged with Steward to be simultaneously shared with Meta, disclosing the patient's PHI and IIHI.
>
> Google Analytics tracks both the patients' general search activity and their "DoctorFinder" search activity. Steward shares this activity along with the patients'

IP addresses and other identifying information directly with Google, disclosing the patient's PHI and IIHI.

Steward does not obtain patients' consent to so share their PHI and IIHI and in fact does not disclose to its patients that it so shares this information with Meta and Google.

Meta and Google receive and store the contents of patient communications with Steward as they occur in real time, possibly before the full response from Steward has even appeared on the patient's computing device.

*Id.*, ¶¶ 4-8.

**Background on Federal Programs**

6.      Since 2004, the federal government has taken substantial efforts to achieve "the nationwide implementation of interoperable health information technology in both the public and private health care sectors."[1]  These efforts included establishing an Office of the National Coordinator for Health Information Technology ("ONC") within the Department of Health and Human Services ("HHS") and appropriating billions of dollars of federal funds to "invest in the infrastructure necessary to allow for and promote the electronic exchange and use of health information for each individual in the United States consistent with the goals outlined in the strategic plan developed by the [ONC]." 111 Pub. L. No. 5, 123 Stat. 115, 246 (codified at 42 U.S.C. § 300jj-31).

7.      To achieve these objectives, the ONC has worked together with private healthcare providers like Steward to build the necessary electronic infrastructure.  Because private healthcare providers like Steward have direct access to patients, the government has worked directly with these providers to improve their "ability to influence patient engagement by

---

[1] Exec. Order No. 13,335, 69 Fed. Reg. 24,057 (Apr. 27, 2004), available at https://www.govinfo.gov/content/pkg/WCPD-2004-05-03/pdf/WCPD-2004-05-03-Pg702.pdf

providing a wider range of technologies and methods for a patient's use." Medicare and

Medicaid Programs; Electronic Health Record Incentive Program-Stage 3 and Modifications to

Meaningful Use in 2015 Through 2017, 80 Fed. Reg. 62,761, 62,848 (Oct. 16, 2015). In fact, the

ONC issues guidance to providers, including guidance requiring "federal agencies" to

"collaborate with . . . private stakeholders to . . . [b]uild a culture of electronic health information

access and use."[2]

8.      To further the federal government's objective, it also included Medicare and

Medicaid Electronic Health Records (EHR) incentive and interoperability initiatives.  For

instance, in 2011 CMS established the Meaningful Use program to increase patients'

"meaningful use" of and engagement with their EHR.[3]  These and related programs (including

Merit-based Incentive Payment System (MIPS) and the Primary Care First program) offer

incentive payments to institutional and individual providers that prepare program reports and

demonstrate increased patient engagement.[4]  The patient engagement requirements include

implementing certified EHR technology based on federal standards to help patients access their

medical records.  *See* 45 C.F.R. §§ 170.102; 170.315.

---

[2] ONC, *Federal Health Information Technology Strategic Plan 2015-2020* 1, 8, available at
https://dashboard.healthit.gov/strategic-plan/federal-health-it-strategic-plan-2015-2020.php

[3] *See* CMS.gov, *Promoting Interoperability Programs,* available at
https://www.cms.gov/Regulations-and-Guidance/Legislation/EHRIncentivePrograms

[4] *See id*. (noting history of interoperability programs); CMS.gov, Traditional MIPS Overview,
available at https://qpp.cms.gov/mips/traditional-mips (describing promoting interoperability
component); CMS.gov, Promoting Interoperability Performance Category: Traditional MIPS
Requirements, https://qpp.cms.gov/mips/promoting-interoperability (detailing 2022 MIPS
requirements for Promoting Interoperability component).

9.      CMS recommends that providers create patient "portals" to help patients interact with providers and access their EHR.  Significantly, CMS directs providers to "actively promote and facilitate portal use."[5]

10.      To that end, HHS requires providers to demonstrate increased patient engagement over time.  Early on in the Meaningful Use program, providers could earn incentive payments if they did so.  Now, a failure to satisfy patient engagement or interoperability standards means reductions in Medicare and other federal program payments for services.  *See, e.g.,* 42 U.S.C. § 1395w-4(a)(7). For example, the Meaningful Use program set an objective for providers to "[p]rovide patients the ability to view online, download, and transmit their health information within 4 business days of the information being available to the [provider]."  42 C.F.R. § 495.22(e)(8)(i).  Providers had to demonstrate that a certain percentage of Medicaid patients could view, download, and transmit their health information to a third party (and that percentage threshold increased over time).  *Compare id.* § 495.22(e)(8) (50 percent in 2015), *with id.* § 495.24(d)(5)(i)(B) (80 percent in 2019).

11.      In addition to incentive programs, CMS provided an example of how to engage with patients by creating its own portal and promoting patient engagement through the use of third-party services on its websites.  By working with over two dozen third-parties,[6] CMS is able to "collect basic information about visits to Medicare.gov."  Medicare.gov, *Privacy Policy,*

---

[5] ONC, *How to Optimize Patient Portals for Patient Engagement and Meet Meaningful Use Requirements* (2013), available at https://www.healthit.gov/sites/default/files/nlc_how_to_optimizepatientportals_for_patientengagement.pdf

[6] *See* Medicare.gov, *Privacy information regarding third-party services,* available at https://www.medicare.gov/third-party-privacy-policies

available at https://www.medicare.gov/privacy-policy.  CMS "use[s] third-party web services to conduct outreach and education through the use of digital advertising for Medicare.gov."  *Id.* These services include "the use of web beacons (also called pixels)," which CMS uses "to better target Medicare advertisements." *Id.*

12.     CMS also engaged Facebook to "place[] a cookie or pixel . . . for conversion tracking on certain pages of CMS website. [This] allows Facebook Ads to measure the performance of CMS advertisements based on consumer activity and to report the ad performance to CMS."[7]

## BASIS FOR REMOVAL

13.     Steward removes this action pursuant to the federal officer removal statute, which permits removal when the defendant is "any officer (or any person acting under that officer) of the United States or of any agency therefore, in an office or individual capacity, for or relating to any act under color of such office …"  28 U.S.C. § 1442(a)(1).

14.     The federal officer removal statute is broadly construed, and a defendant can remove under this statute when it acts under color of federal office.  *Colorado v. Symes*, 286 U.S. 510, 517 (1932); *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981).

15.     A defendant must show that (a) it is a "person" within the meaning of the statute and "acting under a federal officer's authority"; (b) that the charged conduct was carried out "for

---

[7] *See* HHS, *Third Party Websites and Applications Privacy Impact Assessment –Facebook Ads* (Sept. 4, 2018), available at https://www.hhs.gov/pia/third-party-websites-and-applications-pia-facebook-ads.html#:~:text=Conversion%20tracking%20allows%20Facebook%20Ads,the%20ad%20performance%20to%20CMS

or relating to" the asserted official authority; and (c) the defendant can assert a "colorable federal defense." *Moore v. Elec. Boat Corp.*, 25 F.4th 30, 34 (1st Cir. 2022).

16.    Steward meets each of these requirements.  First, a limited liability company qualifies as a "person" under the statute, and Steward acted under federal officer authority because it developed its websites at the direction of the federal government which established a series of federal programs that sought to create a nationwide health information technology infrastructure.

17.    Second, Steward's alleged conduct at issue was carried out "for or relating to" the federal incentive and interoperability initiatives centered on Medicare and Medicaid, including without limitation the Meaningful Use program. Through these initiatives, the federal government provided monetary incentives and guidance to providers, including Steward, to enhance patient engagement and expand online access to their EHR.  Under that federal direction, Steward has gathered data demonstrating expanded patient access and improved patient engagement with EHR.

18.    Third, Steward intends to assert at least four (4) colorable federal defenses to Doe's claims, including without limitation (a) a federal question as to whether the information allegedly shared with Meta and Google is subject to HIPAA, as Doe alleges, (b) federal preemption, (c) *Buckman* preemption, and (d) the dormant Commerce Clause.

**<u>Steward Is A Person Acting Under Federal Authority</u>**

19.    Federal officer removal can be effectuated by "any person acting under" a federal officer.  28 U.S.C. § 1442(a)(1).

20.    A limited liability company like Steward, *see* Complaint, ¶ 13, qualifies as a "person" under the statute. *See, e.g., Jones v. Posterity Arora Joint Venture, L.L.C.*, No. EP-18-

CV-370-KC, 2019 WL 13254186, at *2 (W.D. Tex. Jan. 16, 2019); *St. Bernard Port, Harbor &*
*Terminal Dist. v. Violet Dock Port, Inc., LLC*, 809 F. Supp. 2d 524, 530 (E.D. La. 2011).

21.    The "acting under" element for federal officer removal is "broad[ly]" and
"liberally construe[d]."  *Moore,* 25 F.4th at 34 n.3.  This element involves "an effort to *assist,* or
to help *carry out,* the duties or tasks of the federal superior." *Watson,* 551 U.S. at 152 (emphasis
in original).

22.    Steward, on behalf of itself and its providers, "act[ed] under" federal authorities in
multiple ways that Doe now challenges.  Steward's hospitals and eligible providers have been
longstanding participants in federal EHR incentive programs and initiatives, including without
limitation the Meaningful Use program.  Through their participation in these programs and
otherwise, Steward has assisted (and continues to assist) the federal government in carrying out
its goal of creating a nationwide EHR infrastructure.

23.    As part of those efforts, Steward ensured its websites met federal interoperability
standards. Per government directive, Steward also filed reports with the government attesting to
Steward's efforts to increase patient engagement.

24.    Steward even refined its websites (including with digital marketing tools) to drive
and analyze patient engagement and to ultimately increase patient access to EHR.  The federal
government itself used the same digital marketing tools to enhance patient engagement that
Steward used and that Doe now challenges.

25.    Steward's actions followed the guidelines and directives of the ONC, which
closely monitors how providers like Steward can help achieve the government's goal of
promoting patient engagement.  In return, the government has granted Steward and its providers

payments through various federal programs and initiatives. Such exchanges are similar to a government-contractor relationship. *See Moore,* 25 F.4th at 34 n.3.

26.     In *Doe I v. UPMC,* where the plaintiffs made nearly identical allegations and asserted similar claims against the University of Pittsburg Medical Center, "UPMC, as a participant in the Meaningful Use Program, receive[d] incentive payments from DHHS for its development and use of the UPMC website and the MyUPMC portal in accordance with the program's criteria. In particular, UPMC must, among other things, raise awareness and increase usability of the UPMC website and the MyUPMC portal." *UPMC*, 2020 WL 4381675, at *6 (citations omitted). The Court held that UPMC was "'acting under' a federal superior for purposes of the federal officer removal statute" because the "Complaint addresses the design and functionality of UPMC's website and patient portal, implicating UPMC's implementation of the Meaningful Use Program, particularly as the implementation involves patient engagement and usership." *Id. See also ProMedica Health Sys., Inc.*, 2020 WL 7705627, at *3 ("The aim of [Promoting Interoperability Programs] is to create a unified system of patient electronic health records. Because Defendant's participation assisted the federal government in achieving that goal, Defendant has satisfied the 'acting under' prong.").

27.     Put simply, the federal government would not be able to "carry out" these important federal healthcare initiatives without direct participation by providers like Steward, which was compensated for doing same. *See Watson,* 551 U.S. at 152.

<u>**Steward's Alleged Conduct Was Carried Out For Or Related To Federal Authority**</u>

28.     The "for or relating to" element requires that Doe's claims be "relate[d] to" actions Steward took while "acting under" federal authority. *See Moore,* 25 F.4th at 35-36. "In 2011, Congress amended § 1442(a)(1) to allow removal based on a suit 'for or relating to any act

under color of [federal] office,'" and since then "[c]ircuits have consistently given this requirement a broad reading and held that no causal link is required." *Id.* at 35 (emphasis in original). "Any single claim is independently sufficient to satisfy the 'for or relating to' requirement under § 1142(a)(1)." *Id.*

29.    Each of Doe's claims challenge Steward for its actions that "relat[e] to" the work Steward performed designing and administering its websites while acting under federal authority. Doe alleges she "has used the Steward medical website to book appointments, enter search queries regarding symptoms, certain health 'conditions, and health professionals, and otherwise exchange communications with Steward relating to her particular medical providers and medical condition." Complaint, ¶ 26.

30.    In particular, Doe focuses on Steward's use of Meta Pixel and Google Analytics. With respect to Meta Pixel, Doe alleges that "Meta Pixel is a species of lx1 pixels (the smallest dot on a user's screen) called a tracking pixel, or a web-bug. . . .  Meta Pixel allows website owners to track visitor activity on their website and measure the effectiveness of advertising." *Id.*, ¶¶ 45-46.  With respect to Google Analytics, Doe alleges "Google Analytics is a web analytics service which allows website owners to track visitor actions on their website to target them with personalized advertisements." *Id.*, ¶ 59.

31.    Doe thus challenges the development of Steward's websites which help promote patient engagement with EHR.  Indeed, other courts agree that this type of challenged conduct "relat[es] to" a provider's work with the federal government.  *See UPMC*, 2020 WL 4381675, at *6 ("Plaintiffs' allegations target mechanisms by which UPMC manages and markets its website and patient portal. There is plainly a connection or association between UPMC's website management and marketing strategies and the Meaningful Use program, particularly the

incentives that are tied to patient participation and usability. Plaintiffs' claims are therefore 'for or relating to' an act under color of federal office."); *ProMedica Health Sys., Inc.*, 2020 WL 7705627, at *3.

### Steward Has A Colorable Federal Defense

32.     The final element for removal under Section 1442 requires that Steward assert a single "colorable federal defense."  *See Mesa v. California,* 489 U.S. 121, 129-30 (1989). Steward has at least four (4).

33.     A federal defense is "colorable" if it is not "wholly insubstantial and frivolous," even if it is not "clearly sustainable."  *Moore,* 25 F.4th at 37 (quotations and citations omitted). When assessing whether a federal defense is colorable, "the burden is low, and the requirement has generally not proven an obstacle[.]"  *Id.* at 36 (quotations and citation omitted).

34.     First, federal officer removal is allowed where "it appears that a Federal question or a claim to a Federal right is raised in the case, and must be decided therein." *UPMC*, 2020 WL 4381675, at *6 (quotations and citations omitted).   HIPAA underlies all of Doe's claims but, contrary to her allegations, the allegedly disclosed information was not protected under HIPAA.

35.     Relying on and specifically citing to HIPAA, Doe alleges that "federal law protect[s] the confidentiality of a Patient's private health records and communications, and strictly limit[s] the disclosure of such information without consent."  Complaint, ¶ 3.  *See also id.* ("Regulations promulgated under HIPAA define IIHI as health information that can be linked to a specific person and PHI as IIHI that is transmitted by or maintained in electronic media as well as any other form or medium. See 45 CFR 46.160.103.").

36.     Doe's invasion of privacy claims are based specifically on HIPAA, which Doe makes great efforts to substantiate.  According to Doe:

11

HIPAA prohibits disclosure of individually identifiable health information ("IIHI"). HIPAA's privacy rule defines IIHI as information that relates to:

> an individual's past, present, or future physical or mental health or condition;

> an individual's provision of health care; or

> past, present, or future payment for the provision of health care to an individual.

> Identifies the individual or that there is a reasonable basis to believe that it can be used to identify the individual.

> Is created or received by a health care provider, health plan, employer, or health care clearinghouse.

HIPAA's security rule defines protected health information ("PHI") as information that is transmitted or maintained in electronic, written, or oral form. 45 C.F.R. §160.103.

On December 1, 2022, the Office for Civil Rights of the U.S. Department of Health and Human Services issued a bulletin to highlight the obligations of HIPAA-covered entities using "online tracking technologies," as Steward does.

These technologies include pixels, fingerprinting scripts, cookies and web beacons, code' that tracks and profiles users' online activities and discloses the collected user data to technology vendors for marketing purposes without HIPAA-compliant authorization.

The HHS Bulletin states: "Regulated entities are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of protected health information (PHI) to tracking technology vendors or any other violations of the HIPAA Rules."

Complaint, ¶¶ 95-99.

37.    Doe also alleges repeatedly that Steward unlawfully shared patients' IP addresses with Meta and Google, *id.*, ¶¶ 6, 42, 64, and that "HIPAA deems an IP address to be personally identifiable data. 45 C.F.R. § 164.514(b)(2)(i)(0)."  *Id.*, ¶ 66.

38.    In *UPMC*, "Plaintiffs ma[de] several allegations related to HIPAA."  *UPMC*, 2020 WL 4381675, at *6.  Like Doe, "[c]iting HIPAA, Plaintiffs allege[d] . . . that 'a health care

provider may not disclose personally identifiable information about a patient, potential patient, or household member of a patient for marketing purposes without the patient's express written authorization.'"  *Id*.  Like Doe, "Plaintiffs allege[d] that under HIPAA, an IP address is considered personally identifiable information, and that cookies and browser fingerprints are protected personal identifiers."  *Id*.  Like Steward does here, UPMC argued in its Notice of Removal that it would "argue 'that the data at issue—the content of web searches, IP addresses, cookies, and browser fingerprints—are not subject to HIPAA.'"  *Id*.  Accordingly, the Court held that "Plaintiffs plainly allege[d] that UPMC ha[d] a federal duty under HIPAA and that UPMC violated that duty. Because UPMC denies violating its duties under HIPAA, UPMC raise[d] a colorable federal defense."  *Id*.  *See also ProMedica Health Sys., Inc.*, 2020 WL 7705627, at *3 ("Defendant argues that it will raise preemption defenses, including [HIPAA]. A defense based on federal preemption of state law is sufficient to raise a colorable federal defense for the purposes of the federal officer removal statute. Without reaching the merits of these defenses, which would be improper at this stage, this Court notes that either defense would require the interpretation of federal law and are colorable on their face. Because of this, Defendant has met the third and final prong.").

39.    Second, Steward intends to argue that HIPAA preempts the Massachusetts laws upon which Doe relies, in whole or in part.  *See* 45 C.F.R. § 160.203.  Deciding that question necessarily requires interpreting and applying federal law.  *UPMC*, 2020 WL 4381675, at *7 ("UPMC contends that 'certain state-law privacy standards are preempted under HIPAA.' . . . Whether or not that is true is for a federal court to decide, as it will require the interpretation of a federal statute."); s*ee also United States ex rel. Health Outcomes Techs., Inc. v. Hallmark Health*

*Sys., Inc.,* No. CV 01-11375-NMG, 2005 WL 8175864, at *1 (D. Mass. Dec. 8, 2005) (finding

that HIPAA, as a federal law, can preempt state law).

     40.    Third, Doe's state law claims are preempted in whole or in part under *Buckman*

*Co. v. Plaintiffs' Legal Comm.,* 531 U.S. 341, 347 (2001), which held that federal preemption

applies where the relationship between defendant and the government is "inherently federal in

character because the relationship . . . originates from, is governed by, and terminates according

to federal law."  Federal district courts are the proper forum for evaluating *Buckman* preemption

defenses.  *Id.; see also UPMC*, 2020 WL 4381675, at *7 ("UPMC argues that the nature of its

involvement in DHHS's Meaningful Use Program is inherently federal. . . . UPMC thus contends

it is entitled to federal judicial review to assess allegations that implicate its relationship with

DHHS and involvement in the Meaningful Use Program. . . . Having already found that UPMC

was 'acting under' DHHS when it engaged in the complained-of conduct, it follows that the

relationship between UPMC and DHHS is 'inherently federal' in nature, such that the issue of

whether Plaintiffs' state-law claims are preempted under the principles articulated in *Buckman*

should be decided by a federal court.").

     41.    Fourth, Steward has a colorable federal defense under the dormant Commerce

Clause, which "prohibits state laws that unduly restrict interstate commerce." *Tennessee Wine &*

*Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2459 (2019).  "[A] state law that has the

'practical effect' of regulating commerce occurring wholly outside that State's borders is invalid

under the Commerce Clause."  *Healy v. Beer Inst., Inc*., 491 U.S. 324, 332 (1989).

     42.    Steward's hospitals and providers are not limited to Massachusetts.  Doe alleges

"Steward operates an additional 29 hospitals in eight other states: Florida (8), Texas (6), Utah

(5), Arizona (4), Pennsylvania (2), Ohio (2), Arkansas (1) and Louisiana (1)."  Complaint, ¶ 21.

Indeed, Steward's websites are not limited to patients or providers in Massachusetts.  Doe's state law claims concerning Steward's websites used by patients outside Massachusetts violates the federal dormant Commerce Clause, and at a minimum raises a colorable federal defense.  *See UPMC*, 2020 WL 4381675, at *7 (finding colorable dormant Commerce Clause defense under similar circumstances).

## PROCEDURAL REQUIREMENTS

43.     All of the procedural requirements for removal under 28 U.S.C. § 1446 are satisfied here.

44.     Steward is filing this Notice of Removal within 30 days after Doe purportedly served Steward on March 6, 2023.  28 U.S.C. § 1446(b).

45.     This Court is the corresponding federal court for the Suffolk County Superior Court of the Commonwealth of Massachusetts, where the suit was originally filed.  Venue is therefore proper under 28 U.S.C. §§ 101 and 1441(a); *see also* L.R. 40.1(a), (d).

46.     Steward has attached a copy of the Complaint and all other publicly available filings from the state court docket as Exhibits 1-7.

47.     Upon filing this Notice, Steward will promptly "give written notice thereof to all adverse parties," and will "file a copy of the notice with the clerk" of the Suffolk County Superior Court.  28 U.S.C. § 1446(d).

WHEREFORE, Notice is hereby given that this action is removed from the Suffolk County Superior Court for the Commonwealth of Massachusetts to the United States District Court for the District of Massachusetts.

Respectfully submitted,

STEWARD HEALTH CARE SYSTEM LLC,

By its attorneys,


 /s/ Ian Pinta
Howard M. Cooper (BBO No. 543842)
Ingrid S. Martin (BBO No. 653632)
Ian J. Pinta (BBO No. 667812)
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA 02110
617-720-2626
hcooper@toddweld.com
ipinta@toddweld.com

Dated: April 3, 2023


## CERTIFICATE OF SERVICE

I, Ian J. Pinta, do hereby certify that on this 3rd day of April, 2023, I caused the foregoing
document to be filed through the ECF system and to be sent electronically to the registered
participants as identified on the Notice of Electronic Filing, and to be served via electronic mail
and overnight mail upon counsel of record for the Plaintiff.


 /s/ Ian Pinta
Ian J. Pinta

Dated: April 3, 2023