# Exhibit 1

## COMMONWEALTH OF MASSACHUSETTS

**SUFFOLK, ss.**                                          **SUPERIOR COURT DEPARTMENT**
                                                          **CIVIL ACTION NO.:**

_____
                                                )
**Jane Doe, individually and on behalf of all** )
**others similarly situated,**                  )
                                                )
                            **Plaintiff,**      )
                                                )        **Class Action Complaint**
**v.**                                          )
                                                )
**Steward Health Care System LLC,**             )        **Jury Trial Demanded**
                                                )
                            **Defendant.**      )
_____         )

### Introduction

1.      Steward Health Care System LLC ("Steward") operates <u>websites</u> for its

various medical facilities through which Steward patients book appointments, describe

symptoms, and communicate highly sensitive personal medical information intended

only for their doctors and health services professionals.

2.      Unbeknownst to the patients who use its medical websites, Steward

shares patients' private protected health information ("PHI") and individually

identifiable health information ("IIHI") with Meta Platforms, Inc.'s social media

application, Facebook, and with Google.

3.      Both Massachusetts and federal law protect the confidentiality of a

patient's private health records and communications, and strictly limit the disclosure of

such information without consent.  G.L. c. 111, § 70E; Health Information Portability

and Accountability Act ("HIPAA"), Pub. L. No. 104-191 (1996),. Regulations

promulgated under HIPAA define IIHI as health information that can be linked to a

specific person and PHI as IIHI that is transmitted by or maintained in electronic media

as well as any other form or medium. *See* 45 CFR 46.160.103.

4.      Steward has deployed throughout its medical website system both Meta

Pixel and Google Analytics, invisible programming code that tracks users' actions as

they navigate through the medical website.

5.      Meta Pixel and Google Analytics are automatic re-routing programs. Meta

Pixel causes the contents of patient communications exchanged with Steward to be

simultaneously shared with Meta, disclosing the patient's PHI and IIHI.

6.      Google Analytics tracks both the patients' general search activity and their

"DoctorFinder" search activity. Steward shares this activity along with the patients' IP

addresses and other identifying information directly with Google, disclosing the

patient's PHI and IIHI.

7.      Steward does not obtain patients' consent to so share their PHI and IIHI

and in fact does not disclose to its patients that it so shares this information with Meta

and Google.

8.      Meta and Google receive and store the contents of patient

communications with Steward as they occur in real time, possibly before the full

response from Steward has even appeared on the patient's computing device.

9.      This contemporaneous sharing of patients' PHI and IIHI violates

Plaintiff's and Class Members' rights as patients and their reasonable expectations of

privacy. It also breaches the express and implied promises Steward makes to patients.

10.     Steward's surreptitious sharing of this information with Meta and Google violates the Massachusetts Wiretap Act ("Wiretap Act" or "the Act"), G.L. c. 272, § 99, as well as c. 214, §1B (right of privacy) and c. 111, §70E (patients' and residents' rights).

11.     Plaintiff Jane Doe seeks statutory damages and injunctive relief on her own behalf and that of a class of similarly situated Massachusetts residents to remedy Steward's violations of law.

## Parties

12.     Steward Health Care System LLC, ("Steward") is a private physician-owned healthcare network. Steward offers services both in-person and online.

13.     Steward is a Limited Liability Company registered under the laws of Delaware and headquartered in Texas.

14.     Jane Doe is a Massachusetts resident and patient of Steward Healthcare.

## Jurisdiction

15.     This Court has jurisdiction over Steward because it is licensed to do business in the Commonwealth of Massachusetts, has offices in and transacts substantial business in Boston and other Massachusetts communities.

16.     This Court has subject matter jurisdiction over this action pursuant to G.L. c. 212, § 3 because this action seeks money damages greater than $25,000.

17.     This Court has personal jurisdiction over Steward pursuant to G.L. c. 223A, § 3 because Steward is licensed to do business in the Commonwealth of Massachusetts, has offices in and transacts substantial business here and this action arises from Steward's contracting to supply services and things including, but not

limited to, health care services, within the Commonwealth and causing tortious injury within the Commonwealth.

18.     Venue is proper in this county pursuant to Mass. Ann. Laws c. 223, § 1 because Steward has a usual place of business in Boston, Massachusetts.

**Facts**

**Steward's System**

19.     Steward operates 10 hospitals in Massachusetts.

## Massachusetts

**Carney Hospital**

HOSPITAL ADDRESS
2100 Dorchester Ave.
Dorchester, MA 02124

**Good Samaritan Medical Center**

HOSPITAL ADDRESS
235 North Pearl St.
Brockton, MA 02301

**Holy Family Hospital – Haverhill**

HOSPITAL ADDRESS
140 Lincoln Ave.
Haverhill, MA 01830

**Holy Family Hospital – Methuen**

HOSPITAL ADDRESS
70 East St.
Methuen, MA 01844

**Morton Hospital**

HOSPITAL ADDRESS
88 Washington St.
Taunton, MA 02780

**Nashoba Valley Medical Center**

HOSPITAL ADDRESS
200 Groton Road
Ayer, MA 01432

**New England Sinai Hospital**

HOSPITAL ADDRESS
150 York St.
Stoughton, MA 02072

**Norwood Hospital**

HOSPITAL ADDRESS
800 Washington St.
Norwood, MA 02062

**Saint Anne's Hospital**

HOSPITAL ADDRESS
795 Middle St.
Fall River, MA 02721

**St. Elizabeth's Medical Center**

HOSPITAL ADDRESS
736 Cambridge St.
Brighton, MA 02135

20.     Once a collection of struggling hospitals in Massachusetts, Steward is now the largest private, for profit hospital operator in the country.

21.     Steward operates an additional 29 hospitals in eight other states: Florida (8), Texas (6), Utah (5), Arizona (4), Pennsylvania (2), Ohio (2), Arkansas (1) and Louisiana (1).

22.     Steward employs approximately 42,000 health care professionals. The Steward network includes multiple urgent care centers and nursing facilities, substantial behavioral health services, and over 7,900 beds under management.

23.     The Steward Health Care Network includes 5,000 physicians across 800 communities who provide health services to more than 2.2 million patients per year.

24.     Steward's annual revenue for the last year was reported to be $5.4 billion.

**Steward Shared Jane Doe's Private Health Information With Meta and Google Without Her Knowledge or Consent**

25.     Jane Doe has been a Steward patient at all times relevant to this action.

26.     Ms. Doe has used the Steward medical website to book appointments, enter search queries regarding symptoms, certain health conditions, and health professionals, and otherwise exchange communications with Steward relating to her particular medical providers and medical conditions.

27.     Ms. Doe has used Steward's medical website approximately three to four times per year since 2021.

28.     Steward contemporaneously disclosed Ms. Doe's communications, including patient status and personally identifiable information associated with these communications, as well as her Facebook Profile ID, to Meta and Google.

29.     Ms. Doe had no idea that Steward was so sharing her PHI and IIHI with Meta and Google until discovering so shortly before filing this lawsuit.

30.     Ms. Doe's PHI and IIHI and her medical website history are private and confidential information which no third party has a right to access without her consent.

31.     Ms. Doe used the Steward medical website using the same browser that she uses to login to Facebook and Instagram.

32.     Ms. Doe has maintained a Facebook account for approximately twelve years and spends about eight hours per week on Facebook.

33.     Ms. Doe's Facebook profile includes personal information about her, including her name and other personal details.

34.     Ms. Doe has maintained an Instagram account for approximately three months and spends about 30 minutes per week on Instagram.

35.     Since she began using Steward's medical website Ms. Doe has noticed personalized advertisements for medical services on Facebook.

36.     Upon information and belief Meta and/or Google compensated Steward for the disclosures of Ms. Doe's PHI and IIHI (and that of putative class members) in the form of enhanced marketing services.

37.     Steward profited from its sharing of Ms. Doe's information.

38.     Steward violated Ms. Doe's rights to privacy in her personally identifiable, sensitive, confidential medical communications.

## Common Allegations

**Steward Shared Plaintiff's and Class Members' Private, Confidential Health Information With Meta And Google Without Disclosure Or Consent**

**Steward's Medical Website System**

39.     Through its medical website system Steward patients can schedule doctor appointments, search for physicians, specialists, various medical information, medical services, and more. Patients communicate their medical information via the medical website, including private and confidential information regarding their medical conditions and treatment.

40.     Steward's medical website system surreptitiously and contemporaneously shares with Facebook and Google private patient medical information as the patient digitally provides it via the website — without the patient's consent.

41.     The information Steward contemporaneously shares includes but is not limited to the types of medical treatment patients are seeking and the name and specialty of the physician(s) with whom patients are seeking treatment and scheduling appointments.

42.     Steward's medical website system discloses patients' PHI and IIHI along with their Facebook ID to Meta, as well as sharing its patients' IP addresses with Google.

43.     A Facebook ID ("FID") uniquely identifies a person's Facebook user account. Anyone who possesses an FID can use this identifier to easily view its

corresponding Facebook profile. So, anyone who knows how to use Facebook can use the information that Steward is disclosing to identify a Facebook using patient.

**Meta Pixel**

44.     Steward collects and shares its patients' personal health information with Meta using a "Meta Pixel" or "Pixel." A Meta Pixel is a snippet of invisible programming code that tracks users as they navigate through a website, including what searches they performed and which items they have clicked on or viewed.

45.     Meta Pixel is a species of 1x1 pixels (the smallest dot on a user's screen) called a tracking pixel, or a web-bug. These web bugs are tiny and purposefully camouflaged to remain invisible to the user.

46.     Meta Pixel allows website owners to track visitor activity on their website and measure the effectiveness of advertising. Website owners like Steward obtain these services from Meta by adding Meta Pixel's source code to their websites.

47.     Meta Pixel redirects information to Facebook describing certain actions by each user who uses the website, along with the user's FID.

48.     Using Meta Pixel, Steward shares with Meta its patients' online activity relating to their private medical treatment, along with patient FIDs despite patients' having not consented to such sharing.

49.     The Meta Pixel sends information to Meta in a data packet containing PHI and IIHI such as the patient's IP address, name, email, phone number, physician appointments and appointment requests, symptoms, diagnoses, and medications. Meta then stores this data on its own servers.

50.     Through the embedded Meta Pixel, Steward discloses to Meta the unwitting patient's PHI, IIHI, FID and website navigation to Meta together in a single, unencrypted transmission.

**Example Of Patient Medical Website Visit**

51.     Upon entering one of Steward's websites, patients can search for conditions, doctors, locations, and more.

52.     The image below was captured from the Morton Hospital website homepage.



53.     After submitting their search, patients are directed to the search results page. The image below is from the Morton Hospital psychiatry support group page.



54. As the patient submits a search request, the content of their search, along with the patient's FID, is automatically sent directly to Facebook.

55. The image below depicts the private and sensitive health information of a patient that Steward sent to Facebook contemporaneously as a patient used the website to search for a psychiatry support group.

:path: /tr/?id=650452735569911&ev=PageView&dl=https%3A%2F%2Fwww.mortonhospital.org%2Fsteward-search%2
Fpsychiatry%2Bsupport%2Bgroup&rl=https%3A%2F%2Fwww.mortonhospital.org%2Fsteward-search%2Fsupport%2Bg
roup&if=false&ts=1651063211925&sw=1920&sh=1080&v=2.9.57&r=stable&ec=0&o=30&fbp=fb.1.1649931144399.11
27037860&it=1651063211864&coo=false&rqm=GET&dt=ndqjpjwho2w3gdb9550crf9e50wl0iaw

:scheme: https

accept: image/avif,image/webp,image/apng,image/svg+xml,image/*,*/*;q=0.8

accept-encoding: gzip, deflate, br

accept-language: en-US,en;q=0.9,he;q=0.8

cookie: sb=dbBWYmS3UMVNvE19SKz4PRCj; datr=fN5WYqGWsm92TCMUTLnPqDoc; c_user=1000███████████xs=15%3Ao
gF87uOIYA_Mxg%3A2%3A1649872587%3A-1%3A15115; fr=0IeevfipYvHF41t8Z.AWXUJwxkApw0PN2uiX7XWp_aAQs.BiVw6
h.dx.AAA.0.0.BiZQfR.

referer: https://www.mortonhospital.org/

56.    This information, revealing the search parameters and the patient's FID, was sent directly to Facebook.

57.    As shown in the image, Steward's medical website transmitted to Facebook the search content the patient submitted. The above information, combined with the patient's FID (c_user field), allows Facebook to identify the person who has submitted this information through Steward's website.

58.    Every communication exchanged between a patient and Steward at Steward.org causes each patient's personally identifiable data and the precise content of the patient's communication to be contemporaneously and automatically redirected or re-routed to Meta and Google.

**Google Analytics**

59.     Google Analytics is a web analytics service which allows website owners to track visitor actions on their website to target them with personalized advertisements.

60.     Google Analytics is "far and away the web's most dominant analytics platform" and "tracks you whether or not you' are logged in." *Who Has More of Your Personal Data than Facebook? Try Google,* The Wall Street Journal, https://www.wsj.com/articles/who-has-more-of-your-personal-data-than-facebook-try-google- 1524398401

**Steward Ignored Google's Prohibition On Using Its Marketing Tools On Healthcare Related Websites**

61.     Google warns developers in its Personalized Advertising policies page that "Health' in personalized advertising" is a "Prohibited category" for Google's personalized advertising tools. Specifically, Google's advertising policies page states:

> We take user privacy very seriously, and we also expect advertisers to respect user privacy. These policies define how advertisers are allowed to collect user data and use it for personalized advertising. They apply to advertisers using targeting features, including remarketing, affinity audiences, custom affinity audiences, in-market audiences, similar audiences, demographic and location targeting, and keyword contextual targeting....

62.     "Advertisers can't use sensitive interest categories to target ads or to promote advertisers' products or services." "Health" is one such "[p]rohibited categor[y]" that Google states "can't be used by advertisers to targets ads to users or promote advertisers' products or services."

https://support.google.com/adspolicy/answer/143465?hl=en

63.     Google provides instructions for web developers to anonymize IP addresses when they use Google Analytics. The IP anonymization feature "is designed to help site owners comply with their own privacy policies,' or, in some countries, recommendations from local data protection authorities, which may prevent the storage of full IP address information."

https://support.google.com/analytics/answer/2763052?hl=en

64.     Steward nevertheless uses Google Analytics to track both the patients' general search activity and their "DoctorFinder" search activity. Steward shares this activity, along with the patients' IP addresses, with Google.

65.     An IP address is a number that identifies a specific device connected to the Internet.

66.     HIPAA deems an IP address to be personally identifiable data. 45 C.F.R. § 164.514(b)(2)(i)(O).

67.     Google Analytics collects IP addresses of individual Internet users to facilitate and track Internet communications. Google can use the information that Steward discloses to identify a specific patient's actions on Steward's websites.

68.     Google Analytics allows Steward to anonymize its patients using IP anonymization. If Steward were to use Google's IP anonymization a so-called "aip=1" parameter will prevent Google from being able to identify the patient using the website.



69.     Without the "aip" parameter, the IP address is not anonymized. And

Steward chose not to enable IP anonymization, as demonstrated by the absence of the

"aip" parameter in the image below:

▼ Query String Parameters      view source      view URL-encoded

v: 1

_v: j96

a: 1520513776

t: pageview

_s: 2

dl: https://providers.steward.org/s/affiliation/a0d5Y00001WQyovQAD/james-d-oshea-1-eaton
-place-suite-22-worcester-ma-01608-saint-vincent-physic

dp: /s/affiliation/a0d5Y00001WQyovQAD/james-d-oshea-1-eaton-place-suite-22-worcester-ma
-01608-saint-vincent-physic

ul: en-us

de: UTF-8

dt: Affiliation Detail

sd: 24-bit

sr: 1920x1080

vp: 1327x929

je: 0

_u: SACAAUAB~

jid:

gjid:

cid: 446140736.1649936098

tid: UA-109686952-1

70.     By using the Google Analytics tool without IP anonymization, Steward

shares with Google its patients' online activity relating to their private medical

treatment, along with patient IP addresses, although patients have not consented to

share such information.

**Steward's "DoctorFinder" Service**

71.     The "DoctorFinder" section of Steward's medical website also shares

patients' private health information directly with Google.

72.     Upon entering one of Steward's medical website homepages, patients may click the "DoctorFinder" link or the "Book Appointment" link, located at the top right-hand side of the page, to search for physicians, as shown in the image below.



73.     After selecting the "DoctorFinder" button or the "Book Appointment" button, patients are directed to the "DoctorFinder" page. On this page, patients can search for a provider by name, specialty, patient age group, location, language, gender, and technical criteria.



74.    Upon selecting their desired search options, patients are directed to the search results page, from where they may select the doctor of their choice.



75.     As the patient sends search requests and views the resulting webpages,
this information is automatically sent directly to Google.

76.     As shown in the image below using a hypothetical patient, Steward's site
transmitted to Google the following: that the patient searched for a provider in
**Massachusetts** who specializes in "**Vaginal cancer,**" sees **teenagers**, and is **accepting
new patients**.

Request URL: https://www.google-analytics.com/j/collect?v=1&_v=j96&a=1328215564&t=pageview&_s=1&dl=https%3A%2F%2Fproviders.steward.org%2Fs%2Fprovider-search-results%3Ffilter%3Dadvanced%26bookable%3Dtrue%26searchTerm%3Dvaginal%2520cancer%26proximity%3D50%26location%3DMassachusetts%252C%2520United%2520States%26pageGroup%3DTeenagers%26geolocation%3D42.3204700602%252C-71.9603257607071%26newPatients%3Dtrue&dp=%2Fs%2Fprovider-search-results&ul=en-us&de=UTF-8&dt=DrFinder%20Search%20Results&sd=24-bit&sr=1920x1080&vp=1221x1239&je=0&_u=QACAAUABAAAAAC~&jid=1842434111&gjid=1112357313&cid=446140736.1649936098&tid=UA-109686952-1&_gid=1511189349.1650188696&_r=1&gtm=2ou4d0&z=543922007

Request Method: POST

Status Code: ● 200

77.     As shown in the image below, Steward transmitted to Google that a patient clicked on the profile page of the obstetrics and gynecology physician Patricia Chernosky.



78.     An HTTP single communication session is sent automatically from the patient's device to Google, revealing the specific physician's name.

```
Request URL: https://www.google-analytics.com/r/collect?v=1&_v=j96&a=1328215564&t=pageview&_s=2&dl=https%3A%2
F%2Fproviders.steward.org%2Fs%2Faffiliation%2Fa0d5Y00001WQymEQAT%2Fpatricia-chernosky-123-summer-street-suit
e-587-worcester-ma-01608-saint-vincen&dp=%2Fs%2Faffiliation%2Fa0d5Y00001WQymEQAT%2Fpatricia-chernosky-123-su
mmer-street-suite-587-worcester-ma-01608-saint-vincen&ul=en-us&de=UTF-8&dt=Affiliation%20Detail&sd=24-bit&sr
=1920x1080&vp=1221x1239&je=0&_u=SACAAUAB4AAAAC~&jid=2082125507&gjid=1552086686&cid=446140736.1649936098&tid=
UA-109686952-1&_gid=1511189349.1650188696&_r=1&gtm=2ou4d0&z=1708715513
Request Method: POST
Status Code: ⊗ 200
```

79.     The above information, combined with the patient's IP address, allows
Google to identify the person who has submitted this information through Steward's
website.

**Steward Breaches Its Privacy Policy By Its Unauthorized, Undisclosed Sharing Of
Patient Health Information with Meta and Google**

80.     Patients' activity on Steward's medical website system, including pages
accessed and links clicked, are private communications patients direct to Steward. By
embedding the Meta Pixel and Google Analytics tools source codes into its medical
website system, Steward is disclosing to Google and Facebook the contents of those
communications.

81.     Steward's Patient Privacy Policy fails to disclose that the sites track the
activities of site visitors and shares their personal information with Google and
Facebook. Although the Patient Privacy Policy provides an extensive list of the ways in
which Steward may use and disclose health information about its patients, it makes no
mention that it uses web bugs, including Meta Pixel and Google Analytics, to track and
automatically transmit communications to Meta and Google.

82.     Steward's Privacy Policy explicitly states that:

We are required by law to protect the privacy of any medical information
that identifies you... . We must also obtain your Authorization prior to

20

using or disclosing your medical information to send you any marketing materials...In addition, we are prohibited from selling your medical information without your written authorization to do so.

83.     The Privacy Policy also states that "[f]or any purpose other than the ones described...we may only use or share your medical information when you grant us your written permission."

84.     But in direct contravention of its Privacy Policy, Steward uses Meta Pixel and Google Analytics to gather medical information about Plaintiff Jane Doe and putative class members and disclose it to Meta and Google without patients' consent.

85.     The web pages that are being presented to the patient and the patient's interactions with the website are communications between Steward and its patients.

86.     Steward allows Meta and Google to intercept those communications by embedding Meta Pixel and Google Analytics on its websites.

### Applicable Massachusetts Law

**The Wiretap Act**

87.     Massachusetts General Laws c. 272, § 99 prohibits any person from willfully and secretly intercepting the contents of any wire communication by using any intercepting device unless given prior authority by all parties to a communication to do so.

88.     The Wiretap Act provides a civil remedy "against any person who so intercepts, discloses, or uses such communications or who so violates his personal, property, or privacy interest." c. 272, § 99Q.

89.     An "interception" under the statute "means to secretly hear, secretly record, or aid another to secretly hear or secretly record the contents of any wire ... communication through the use of any intercepting device by any person other than a person given prior authority by all parties to such communication[.]" c. 272, § 99(4).

90.     An "intercepting device" is "any device or apparatus which is capable of transmitting, receiving, amplifying, or recording a wire ... communication[.]" c. 272, § 99(3).

91.     "[C]ontents" includes "any information concerning the identity of the parties to such communication or the existence, contents, substance, purport, or meaning of that communication." c. 272, § 99B(5).

92.     Prevailing plaintiffs are "entitled to recover ... "(1) actual damages' but not less than liquidated damages computed at the rate of $100 per day for each day of violation or $1,000, whichever is higher; (2) punitive damages; and (3) a reasonable attorney's fee and other litigation disbursements reasonably incurred." c. 272, § 99Q.

**Invasion of Privacy**

93.     G.L. c. 214, § 1B, provides that "a person shall have a right against unreasonable, substantial, or serious interference with his privacy. The superior court shall have jurisdiction in equity to enforce such a right and in connection therewith to award damages."

94.     G.L. c. 111, § 70E provides that every patient or resident of a Massachusetts health care facility shall have the right "to confidentiality of all records and communications to the extent provided by law."

95.     HIPAA prohibits disclosure of individually identifiable health

information ("IIHI"). HIPAA's privacy rule defines IIHI as information that relates to:

> an individual's past, present, or future physical or mental health or
> condition;
>
> an individual's provision of health care; or
>
> past, present, or future payment for the provision of health care to an
> individual.
>
> Identifies the individual or that there is a reasonable basis to believe that it
> can be used to identify the individual.
>
> Is created or received by a health care provider, health plan, employer, or
> health care clearinghouse.

96.     HIPAA's security rule defines protected health information ("PHI") as

information that is transmitted or maintained in electronic, written, or oral form. 45

C.F.R. §160.103.

97.     On December 1, 2022, the Office for Civil Rights of the U.S. Department of

Health and Human Services issued a bulletin to highlight the obligations of HIPAA-

covered entities using "online tracking technologies," as Steward does.

98.     These technologies include pixels, fingerprinting scripts, cookies and web

beacons, code that tracks and profiles users' online activities and discloses the collected

user data to technology vendors for marketing purposes without HIPAA-compliant

authorization.

99.     The HHS Bulletin states: "Regulated entities are not permitted to use

tracking technologies in a manner that would result in impermissible disclosures of

protected health information (PHI) to tracking technology vendors or any other violations of the HIPAA Rules."

**Fiduciary Duty to Maintain Patient Confidentiality**

100.    As a medical provider for Plaintiff and Class Members, Steward owes its patients a fiduciary duty of confidentiality in providing health care and in maintaining patients' health information.

101.    All health care providers owe their patients a duty not to disclose medical information about the patient without the patient's informed consent.

## Class Allegations

102.    The class is composed of all Massachusetts residents who:

(i)     are current Steward patients or were Steward patients at any time since March 31, 2016; and

(ii)    used any of Steward's medical websites to search for or communicate information concerning the symptoms, diagnosis or treatment of a medical condition, to use the "doctor finder" feature, or to schedule an appointment.

103.    The Class Period begins on March 31, 2016 and ends on the date when a class is certified in this case.

104.    Based on the volume of patient use of Steward's medical websites, the prospective class numbers more than 100,000, making joinder of all members impracticable. The exact size of the proposed class and the identity of the class members are readily ascertainable from Steward's business records.

105.    There are questions of law and fact common to the class, which predominate over any questions affecting only individual class members. The principal common issues regarding the class include whether:

    a.    Steward's use of Meta Pixel and/or Google Analytics was without patient consent or authorization;

    b.    Steward obtained and shared or caused to be obtained and shared Plaintiff's and Class members' PHI and/or IIHI through tracking using Meta Pixel and/or Google Analytics;

    c.    Steward's practices relating to disclosures of Plaintiff's and Class Members' communications with Steward to Meta and/or Google attached to PHI and/or IIHI were intentional;

    d.    Steward profited from the disclosures to Meta and/or Google;

    e.    Steward's practices relating to disclosures of Plaintiff's and Class Members' communications with Steward to Meta and Google attached to PHI and/or IIHI violate G.L. c. 272, § 99, c. 214, § 1B, and/or c. 111, § 70E;

    f.    Steward's practices constitute a breach of fiduciary duty;

    g.    Steward's conduct harmed and continues to harm Plaintiff and Class Members, and, if so, the extent of injury.

106.    There are no difficulties likely to be encountered by the Court in the management of this proposed class action. There are no individual questions, other than those which can be determined by ministerial inspection of Steward's records, and the issues of liability are determinable entirely from the face of the operative documents.

107.    The Plaintiff's claims are typical of those of the class she seeks to represent, and she will fairly and adequately protect and represent the interests of the class. There is no conflict between Plaintiff and the proposed class.

108.    A class action is superior to other methods for the fair and efficient adjudication of this controversy. Because the damages suffered by the individual class members may be relatively small compared to the expense and burden of litigation, it would be impractical and economically unfeasible for class members to seek redress individually. In addition, it is likely that most class members are unaware that they have claims. Finally, the prosecution of separate actions by the individual class members, even if possible, would create a risk of inconsistent or varying adjudications regarding the individual class members against Steward.

109.    Plaintiff is represented by counsel competent and experienced in both consumer protection and class action litigation.

110.    Steward has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

## Tolling Of Statutes Of Limitation

111.    All applicable statutes of limitation have been tolled by Steward's knowing and active concealment of the facts alleged in this Complaint.

112.    Plaintiff and Class members could not have reasonably discovered Steward's practice of sharing their PHI and/or IIHI with Meta and/or Google until shortly before this class action was filed.

113.    Steward was and remains under a continuing duty to disclose to Plaintiff and Class members its practice of sharing PHI and/or IIHI with Meta and/or Google.

114.    As a result of Steward's active concealment, all applicable statutes of limitation have been tolled.

## Claims For Relief

### Count I: Violation Of the Wiretap Statute

115.    Steward is a person as defined by the Wiretap Act.

116.    All communications between Plaintiff or Class Members and Steward qualify as wire communications under Massachusetts law because each communication is made using personal computing devices (e.g., computers, smartphones, tablets) that send and receive communications in whole or in part through the use of facilities used for the transmission of communications aided by wire, cable, or other like connections.

117.    Steward engaged and continues to engage in an "interception" by aiding Meta and Google to secretly record the contents of Plaintiff's and Class Members' wire communications.

118.    The "intercepting devices" used in this case include, but are not limited to:

Plaintiff's and Class Members' personal computing devices;

Plaintiff's and Class Members' web-browsers;

Plaintiff's and Class Members' browser-managed files;

Internet cookies;

Steward's own computer servers;

the third-party source code embedded on Steward's websites; and

the computer servers of Meta and Google, to which Plaintiff's and Class Members' communications were redirected.

119.    Steward aided in and continues to aid in the interception of contents in that the data from the communications exchanged between Plaintiff or Class Members and Steward that were redirected to and recorded by Meta and Google include information which identifies the parties to each communication, their existence, and the exact contents of such communications.

120.    Steward aided in the interception of "contents" in at least the following forms:

The parties to the communications;

The precise text of patient search queries;

The precise text of patient communications about specific doctors;

The precise text of patient communications about specific medical conditions;

The precise text of patient communications about specific treatments;

The precise text of patient communications about billing and payment;

The precise text of specific buttons that patients click to exchange communications at the property, including Log-In, Register, Request an Appointment, Search, and other buttons;

The precise dates and times when patients click to Log-In from the Steward patient medical websites;

Information that is a general summary or informs the third parties of the general subject of communications that Steward sends back to patients in response to search queries and requests for information about specific doctors, conditions, treatments, billing, payment, and other information; and

Any other content Steward aids Meta and Google in scraping from the internet.

## Count II: Violation Of the Privacy Statutes

121.    Steward owes Plaintiff and Class Members a duty of confidentiality.

122.    Despite its statutory duty not to disclose IIHI or PHI without informed consent, Steward disclosed such information relating to Plaintiff's and Class Members' medical treatment to Meta and Google without the patient's knowledge or informed consent.

123.    The information disclosed included Plaintiff's and Class Members' status as Steward patients and the exact contents of communications exchanged between Plaintiffs or Class Members and Steward, including but not limited to information about log-ins to Steward's patient medical website, treating doctors, potential doctors, conditions, treatments, appointments, search terms, and bill payment.

124.    The disclosure of personally identifiable medical information constitutes an unreasonable, substantial, and serious interference with Plaintiffs' and Class Members' rights to privacy, in violation of G.L. c. 214, § 1B and c. 111, § §70E.

125.    Steward's violations of the privacy statutes injured Plaintiff and Class Members.

## Count III: Breach Of Fiduciary Duty

126.    Steward breached its fiduciary duty of confidentiality by disclosing PHI and IIHI about Plaintiff's and Class Members' and the exact content of their communications with Steward.

127.    Steward's breach injured Plaintiff and Class Members in the following ways:

Sensitive and confidential information that Plaintiff and Class Members intended to remain private is no longer private;

Steward eroded the essential confidential nature of the provider-patient relationship;

Steward took something of value from Plaintiff and Class Members and derived benefit therefrom without Plaintiff's and Class Members' knowledge or informed consent and without sharing the benefit of such value;

Plaintiff and Class Members did not get the full value of the medical services for which they paid, which included Steward's duty to maintain confidentiality; and

Steward's actions diminished the value of Plaintiff's and Class Members' personal information.

## Request For Relief

WHEREFORE, Plaintiff, individually and on behalf of all Class Members,

requests that the Court:

Certify the proposed class, appoint Plaintiff as class representative and Plaintiff's counsel as class counsel;

Permanently enjoin Steward from continuing the unlawful practices alleged in this Complaint;

Order Steward to pay both pre-judgment and post-judgment interest on any amounts awarded;

Award costs and reasonable attorneys' fees;

Declare Steward's business practices alleged in the Complaint to be unlawful; and

Order such other or further relief as may be appropriate.

## Demand For Jury Trial

Plaintiff hereby demands a jury trial for all claims so triable.

Dated: January 23, 2023

Date Filed 1/23/2023 1:43 PM
Superior Court - Suffolk
Docket Number

Respectfully submitted,


*/s/ John Roddy*
John Roddy (BBO No. 424240)
Elizabeth Ryan (BBO No. 549632)
Bailey & Glasser LLP
176 Federal Street, 5th Floor
Boston, MA 02110
(617) 439-6730
(617) 951-3954 (fax)
jroddy@baileyglasser.com
eryan@baileyglasser.com

Don Bivens (*pro hac vice* to be submitted)
Don Bivens, PLLC
Scottsdale Quarter
15169 N. Scottsdale Road, Suite 205
Scottsdale, AZ 85254
(602) 708-1450
don@donbivens.com