**COMMONWEALTH OF MASSACHUSETTS**
**SUFFOLK COUNTY CIVIL**
**Docket Report**

---

### 2384CV00174 Doe, Jane vs. Steward Health Care System Llc

| | | | |
|---|---|---|---|
| **CASE TYPE:** | Business Litigation | **FILE DATE:** | 01/23/2023 |
| **ACTION CODE:** BH2 | | **CASE TRACK:** | B - Special Track (BLS) |
| **DESCRIPTION:** Complex Unfair Trade Practices | | | |
| **CASE DISPOSITION DATE:** 04/06/2023 | | **CASE STATUS :** | Closed |
| **CASE DISPOSITION:** | Transferred to another Court | **STATUS DATE :** | 04/06/2023 |
| **CASE JUDGE:** | | **CASE SESSION:** | Business Litigation 1 |

---

| PARTIES |
|---|

| | |
|---|---|
| **Plaintiff**<br>Doe, Jane | **Attorney**    549632<br>Elizabeth A Ryan<br>Bailey and Glasser LLP<br>Bailey and Glasser LLP<br>176 Federal St<br>5th Floor<br>Boston, MA 02110<br>Work Phone (617) 439-6730<br>Added Date: 01/23/2023 |
| | **Attorney**    424240<br>John J Roddy<br>Bailey and Glasser LLP<br>Bailey and Glasser LLP<br>176 Federal St<br>5th Floor<br>Boston, MA 02110<br>Work Phone (617) 439-6730<br>Added Date: 01/23/2023 |

| Defendant | Attorney | 543842 |
|---|---|---|
| Steward Health Care System Llc | Howard Cooper | |
| | Todd and Weld LLP | |
| | Todd and Weld LLP | |
| | One Federal St 27th Floor | |
| | Boston, MA 02110-2012 | |
| | Work Phone (617) 720-2626 | |
| | Added Date: 04/04/2023 | |

| | Attorney | 653632 |
|---|---|---|
| | Ingrid Schupbach Martin | |
| | Todd and Weld LLP | |
| | Todd and Weld LLP | |
| | One Federal St | |
| | 27th Floor | |
| | Boston, MA 02110 | |
| | Work Phone (617) 624-4761 | |
| | Added Date: 04/04/2023 | |

| | Attorney | 667812 |
|---|---|---|
| | Ian J Pinta | |
| | Todd and Weld LLP | |
| | Todd and Weld LLP | |
| | One Federal St 27th Floor | |
| | Boston, MA 02110-2012 | |
| | Work Phone (617) 720-2626 | |
| | Added Date: 04/04/2023 | |

**COMMONWEALTH OF MASSACHUSETTS**
**SUFFOLK COUNTY CIVIL**
**Docket Report**

## INFORMATIONAL DOCKET ENTRIES

| Date | Ref | Description | Judge |
|------|-----|-------------|-------|
| 01/23/2023 | 1 | Complaint electronically filed.  SUMMONS | |
| 01/23/2023 | 2 | Civil action cover sheet filed. | |
| 01/23/2023 | 3 | Plaintiff Jane Doe's Motion to proceed in Pseudonym | |
| 01/23/2023 | | Attorney appearance On this date Elizabeth A Ryan, Esq. added for Plaintiff Jane Doe | |
| 01/31/2023 | | Endorsement on Motion to proceed in Pseudonym (#3.0): ALLOWED after review, ALLOWED. plaintiff shall file a notice with the court disclosing plaintiff's true name and address. the notice shall be impounded in the interest of justice until the completion of this case or further order of the court, and the notice shall be served on defendant's with the complaint (or provided to defense counsel if the complaint has already been served. <br><br>(dated 1/30/23)  notice sent 1/31/23 | Krupp |
| 01/31/2023 | 4 | General correspondence regarding Notice of Acceptance into Business Litigation Session case is assigned to BLS-1. <br><br>(dated 1/24/23)  notice sent 1/31/23 | Salinger |
| 03/10/2023 | 5 | Service Returned for Defendant Steward Health Care System Llc: Service through person in charge / agent; | |
| 04/03/2023 | 6 | Defendant Steward Health Care System Llc's Notice of Filing of Notice of Removal (US Dist # 23-cv-10711) | |
| 04/04/2023 | | Attorney appearance On this date Howard Cooper, Esq. added for Defendant Steward Health Care System Llc | |
| 04/04/2023 | | Attorney appearance On this date Ingrid Schupbach Martin, Esq. added for Defendant Steward Health Care System Llc | |
| 04/04/2023 | | Attorney appearance On this date Ian J Pinta, Esq. added for Defendant Steward Health Care System Llc | |
| 04/06/2023 | | REMOVED to the U.S. District Court of Massachusetts | |
| 04/06/2023 | | Case transferred to another court. | |

I HEREBY ATTEST AND CERTIFY ON
April 6, 2023 , THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

John E. Powers, III
Acting Clerk Magistrate
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT
BY:
Asst. Clerk

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO.:

23.—0174—BLS1

|  |  |  |
|---|---|---|
| Jane Doe, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **Class Action Complaint** |
| Steward Health Care System LLC, | ) ) | **Jury Trial Demanded** |
| Defendant. | ) ) | |

### Introduction

1.     Steward Health Care System LLC ("Steward") operates websites for its various medical facilities through which Steward patients book appointments, describe symptoms, and communicate highly sensitive personal medical information intended only for their doctors and health services professionals.

2.     Unbeknownst to the patients who use its medical websites, Steward shares patients' private protected health information ("PHI") and individually identifiable health information ("IIHI") with Meta Platforms, Inc.'s social media application, Facebook, and with Google.

3.     Both Massachusetts and federal law protect the confidentiality of a patient's private health records and communications, and strictly limit the disclosure of such information without consent.  G.L. c. 111, § 70E; Health Information Portability and Accountability Act ("HIPAA"), Pub. L. No. 104-191 (1996),. Regulations

promulgated under HIPAA define IIHI as health information that can be linked to a specific person and PHI as IIHI that is transmitted by or maintained in electronic media as well as any other form or medium. *See* 45 CFR 46.160.103.

4.      Steward has deployed throughout its medical website system both Meta Pixel and Google Analytics, invisible programming code that tracks users' actions as they navigate through the medical website.

5.      Meta Pixel and Google Analytics are automatic re-routing programs. Meta Pixel causes the contents of patient communications exchanged with Steward to be simultaneously shared with Meta, disclosing the patient's PHI and IIHI.

6.      Google Analytics tracks both the patients' general search activity and their "DoctorFinder" search activity. Steward shares this activity along with the patients' IP addresses and other identifying information directly with Google, disclosing the patient's PHI and IIHI.

7.      Steward does not obtain patients' consent to so share their PHI and IIHI and in fact does not disclose to its patients that it so shares this information with Meta and Google.

8.      Meta and Google receive and store the contents of patient communications with Steward as they occur in real time, possibly before the full response from Steward has even appeared on the patient's computing device.

9.      This contemporaneous sharing of patients' PHI and IIHI violates Plaintiff's and Class Members' rights as patients and their reasonable expectations of privacy. It also breaches the express and implied promises Steward makes to patients.

10.     Steward's surreptitious sharing of this information with Meta and Google violates the Massachusetts Wiretap Act ("Wiretap Act" or "the Act"), G.L. c. 272, § 99, as well as c. 214, §1B (right of privacy) and c. 111, §70E (patients' and residents' rights).

11.     Plaintiff Jane Doe seeks statutory damages and injunctive relief on her own behalf and that of a class of similarly situated Massachusetts residents to remedy Steward's violations of law.

## Parties

12.     Steward Health Care System LLC, ("Steward") is a private physician-owned healthcare network. Steward offers services both in-person and online.

13.     Steward is a Limited Liability Company registered under the laws of Delaware and headquartered in Texas.

14.     Jane Doe is a Massachusetts resident and patient of Steward Healthcare.

## Jurisdiction

15.     This Court has jurisdiction over Steward because it is licensed to do business in the Commonwealth of Massachusetts, has offices in and transacts substantial business in Boston and other Massachusetts communities.

16.     This Court has subject matter jurisdiction over this action pursuant to G.L. c. 212, § 3 because this action seeks money damages greater than $25,000.

17.     This Court has personal jurisdiction over Steward pursuant to G.L. c. 223A, § 3 because Steward is licensed to do business in the Commonwealth of Massachusetts, has offices in and transacts substantial business here and this action arises from Steward's contracting to supply services and things including, but not

limited to, health care services, within the Commonwealth and causing tortious injury within the Commonwealth.

18.     Venue is proper in this county pursuant to Mass. Ann. Laws c. 223, § 1 because Steward has a usual place of business in Boston, Massachusetts.

## Facts

**Steward's System**

19.     Steward operates 10 hospitals in Massachusetts.

## Massachusetts

**Carney Hospital**

HOSPITAL ADDRESS
2100 Dorchester Ave.
Dorchester, MA 02124

**Good Samaritan Medical Center**

HOSPITAL ADDRESS
235 North Pearl St.
Brockton, MA 02301

**Holy Family Hospital – Haverhill**

HOSPITAL ADDRESS
140 Lincoln Ave.
Haverhill, MA 01830

**Holy Family Hospital – Methuen**

HOSPITAL ADDRESS
70 East St.
Methuen, MA 01844

**Morton Hospital**

HOSPITAL ADDRESS
88 Washington St.
Taunton, MA 02780

**Nashoba Valley Medical Center**

HOSPITAL ADDRESS
200 Groton Road
Ayer, MA 01432

**New England Sinai Hospital**

HOSPITAL ADDRESS
150 York St.
Stoughton, MA 02072

**Norwood Hospital**

HOSPITAL ADDRESS
800 Washington St.
Norwood, MA 02062

**Saint Anne's Hospital**

HOSPITAL ADDRESS
795 Middle St.
Fall River, MA 02721

**St. Elizabeth's Medical Center**

HOSPITAL ADDRESS
736 Cambridge St.
Brighton, MA 02135

4

Date Filed 1/23/2023 1:43 PM
Superior Court - Suffolk
Docket Number

20.     Once a collection of struggling hospitals in Massachusetts, Steward is now the largest private, for profit hospital operator in the country.

21.     Steward operates an additional 29 hospitals in eight other states: Florida (8), Texas (6), Utah (5), Arizona (4), Pennsylvania (2), Ohio (2), Arkansas (1) and Louisiana (1).

22.     Steward employs approximately 42,000 health care professionals. The Steward network includes multiple urgent care centers and nursing facilities, substantial behavioral health services, and over 7,900 beds under management.

23.     The Steward Health Care Network includes 5,000 physicians across 800 communities who provide health services to more than 2.2 million patients per year.

24.     Steward's annual revenue for the last year was reported to be $5.4 billion.

**Steward Shared Jane Doe's Private Health Information With Meta and Google Without Her Knowledge or Consent**

25.     Jane Doe has been a Steward patient at all times relevant to this action.

26.     Ms. Doe has used the Steward medical website to book appointments, enter search queries regarding symptoms, certain health conditions, and health professionals, and otherwise exchange communications with Steward relating to her particular medical providers and medical conditions.

27.     Ms. Doe has used Steward's medical website approximately three to four times per year since 2021.

28.     Steward contemporaneously disclosed Ms. Doe's communications, including patient status and personally identifiable information associated with these communications, as well as her Facebook Profile ID, to Meta and Google.

29.     Ms. Doe had no idea that Steward was so sharing her PHI and IIHI with Meta and Google until discovering so shortly before filing this lawsuit.

30.     Ms. Doe's PHI and IIHI and her medical website history are private and confidential information which no third party has a right to access without her consent.

31.     Ms. Doe used the Steward medical website using the same browser that she uses to login to Facebook and Instagram.

32.     Ms. Doe has maintained a Facebook account for approximately twelve years and spends about eight hours per week on Facebook.

33.     Ms. Doe's Facebook profile includes personal information about her, including her name and other personal details.

34.     Ms. Doe has maintained an Instagram account for approximately three months and spends about 30 minutes per week on Instagram.

35.     Since she began using Steward's medical website Ms. Doe has noticed personalized advertisements for medical services on Facebook.

36.     Upon information and belief Meta and/or Google compensated Steward for the disclosures of Ms. Doe's PHI and IIHI (and that of putative class members) in the form of enhanced marketing services.

37.     Steward profited from its sharing of Ms. Doe's information.

6

38.     Steward violated Ms. Doe's rights to privacy in her personally identifiable, sensitive, confidential medical communications.

## Common Allegations

**Steward Shared Plaintiff's and Class Members' Private, Confidential Health Information With Meta And Google Without Disclosure Or Consent**

**Steward's Medical Website System**

39.     Through its medical website system Steward patients can schedule doctor appointments, search for physicians, specialists, various medical information, medical services, and more. Patients communicate their medical information via the medical website, including private and confidential information regarding their medical conditions and treatment.

40.     Steward's medical website system surreptitiously and contemporaneously shares with Facebook and Google private patient medical information as the patient digitally provides it via the website — without the patient's consent.

41.     The information Steward contemporaneously shares includes but is not limited to the types of medical treatment patients are seeking and the name and specialty of the physician(s) with whom patients are seeking treatment and scheduling appointments.

42.     Steward's medical website system discloses patients' PHI and IIHI along with their Facebook ID to Meta, as well as sharing its patients' IP addresses with Google.

43.     A Facebook ID ("FID") uniquely identifies a person's Facebook user account. Anyone who possesses an FID can use this identifier to easily view its

7

corresponding Facebook profile. So, anyone who knows how to use Facebook can use the information that Steward is disclosing to identify a Facebook using patient.

**Meta Pixel**

44.     Steward collects and shares its patients' personal health information with Meta using a "Meta Pixel" or "Pixel." A Meta Pixel is a snippet of invisible programming code that tracks users as they navigate through a website, including what searches they performed and which items they have clicked on or viewed.

45.     Meta Pixel is a species of 1x1 pixels (the smallest dot on a user's screen) called a tracking pixel, or a web-bug. These web bugs are tiny and purposefully camouflaged to remain invisible to the user.

46.     Meta Pixel allows website owners to track visitor activity on their website and measure the effectiveness of advertising. Website owners like Steward obtain these services from Meta by adding Meta Pixel's source code to their websites.

47.     Meta Pixel redirects information to Facebook describing certain actions by each user who uses the website, along with the user's FID.

48.     Using Meta Pixel, Steward shares with Meta its patients' online activity relating to their private medical treatment, along with patient FIDs despite patients' having not consented to such sharing.

49.     The Meta Pixel sends information to Meta in a data packet containing PHI and IIHI such as the patient's IP address, name, email, phone number, physician appointments and appointment requests, symptoms, diagnoses, and medications. Meta then stores this data on its own servers.

50.     Through the embedded Meta Pixel, Steward discloses to Meta the

unwitting patient's PHI, IIHI, FID and website navigation to Meta together in a single,

unencrypted transmission.

**Example Of Patient Medical Website Visit**

51.     Upon entering one of Steward's websites, patients can search for

conditions, doctors, locations, and more.

52.     The image below was captured from the Morton Hospital website

homepage.



53.     After submitting their search, patients are directed to the search results

page. The image below is from the Morton Hospital psychiatry support group page.



54.     As the patient submits a search request, the content of their search, along with the patient's FID, is automatically sent directly to Facebook.

55.     The image below depicts the private and sensitive health information of a patient that Steward sent to Facebook contemporaneously as a patient used the website to search for a psychiatry support group.

:path: /tr/?id=650452735569911&ev=PageView&dl=https%3A%2F%2Fwww.mortonhospital.org%2Fsteward-search%2
Fpsychiatry%2Bsupport%2Bgroup&rl= ttps%3A%2F%2Fwww.mortonhospital.org%2Fsteward-search%2Fsupport%2Bg
roup&if=false&ts=1651063211925&sw=1920&sh=1080&v=2.9.57&r=stable&ec=0&o=30&fbp=fb.1.1649931144399.11
27037860&it=1651063211864&coo=false&rqm=GET&dt=ndqjpjwho2w3gdb9550crf9e50wl0iaw

:scheme: https

accept: image/avif,image/webp,image/apng,image/svg+xml,image/*,*/*;q=0.8

accept-encoding: gzip, deflate, br

accept-language: en-US,en;q=0.9,he;q=0.8

cookie: sb=dbBWYmS3UMVNvE19SKz4PRCj; datr=fN5WYqGWsm92TCMUTLnPqDoc; c_user=1000           xs=15%3Ao
gF8JuOIYA_Mxg%3A2%3A1649872587%3A-1%3A15115; fr=0Ieevfi0YvHF41t8Z.AWXUJwxkApw0PN2uiX7XWp_aAQs.BiVw6
h.dx.AAA.0.0.BiZQfR.

referer: https://www.mortonhospital.org/

56.    This information, revealing the search parameters and the patient's FID, was sent directly to Facebook.

57.    As shown in the image, Steward's medical website transmitted to Facebook the search content the patient submitted. The above information, combined with the patient's FID (c_user field), allows Facebook to identify the person who has submitted this information through Steward's website.

58.    Every communication exchanged between a patient and Steward at Steward.org causes each patient's personally identifiable data and the precise content of the patient's communication to be contemporaneously and automatically redirected or re-routed to Meta and Google.

**Google Analytics**

59.    Google Analytics is a web analytics service which allows website owners

to track visitor actions on their website to target them with personalized

advertisements.

60.    Google Analytics is "far and away the web's most dominant analytics

platform" and "tracks you whether or not you' are logged in." *Who Has More of Your*

*Personal Data than Facebook? Try Google,* The Wall Street Journal,

https://www.wsj.com/articles/who-has-more-of-your-personal-data-than-facebook-

try-google- 1524398401

**Steward Ignored Google's Prohibition On Using Its Marketing Tools On Healthcare Related Websites**

61.    Google warns developers in its Personalized Advertising policies page

that "Health' in personalized advertising" is a "Prohibited category" for Google's

personalized advertising tools. Specifically, Google's advertising policies page states:

> We take user privacy very seriously, and we also expect advertisers to
> respect user privacy. These policies define how advertisers are allowed to
> collect user data and use it for personalized advertising. They apply to
> advertisers using targeting features, including remarketing, affinity
> audiences, custom affinity audiences, in-market audiences, similar
> audiences, demographic and location targeting, and keyword contextual
> targeting....

62.    "Advertisers can't use sensitive interest categories to target ads or to

promote advertisers' products or services." "Health" is one such "[p]rohibited

categor[y]" that Google states "can't be used by advertisers to targets ads to users or

promote advertisers' products or services."

https://support.google.com/adspolicy/answer/143465?hl=en

63.     Google provides instructions for web developers to anonymize IP addresses when they use Google Analytics. The IP anonymization feature "is designed to help site owners comply with their own privacy policies,' or, in some countries, recommendations from local data protection authorities, which may prevent the storage of full IP address information."

https://support.google.com/analytics/answer/2763052?hl=en

64.     Steward nevertheless uses Google Analytics to track both the patients' general search activity and their "DoctorFinder" search activity. Steward shares this activity, along with the patients' IP addresses, with Google.

65.     An IP address is a number that identifies a specific device connected to the Internet.

66.     HIPAA deems an IP address to be personally identifiable data. 45 C.F.R. § 164.514(b)(2)(i)(O).

67.     Google Analytics collects IP addresses of individual Internet users to facilitate and track Internet communications. Google can use the information that Steward discloses to identify a specific patient's actions on Steward's websites.

68.     Google Analytics allows Steward to anonymize its patients using IP anonymization. If Steward were to use Google's IP anonymization a so-called "aip=1" parameter will prevent Google from being able to identify the patient using the website.



69.     Without the "aip" parameter, the IP address is not anonymized. And

Steward chose not to enable IP anonymization, as demonstrated by the absence of the

"aip" parameter in the image below:

▼ **Query String Parameters**     view source     view URL-encoded

**v:** 1

**_v:** j96

**a:** 1520513776

**t:** pageview

**_s:** 2

**dl:** https://providers.steward.org/s/affiliation/a0d5Y00001WQyovQAD/james-d-oshea-1-eaton
-place-suite-22-worcester-ma-01608-saint-vincent-physic

**dp:** /s/affiliation/a0d5Y00001WQyovQAD/james-d-oshea-1-eaton-place-suite-22-worcester-ma
-01608-saint-vincent-physic

**ul:** en-us

**de:** UTF-8

**dt:** Affiliation Detail

**sd:** 24-bit

**sr:** 1920x1080

**vp:** 1327x929

**je:** 0

**_u:** SACAAUAB~

**jid:**

**gjid:**

**cid:** 446140736.1649936098

**tid:** UA-109686952-1

70.     By using the Google Analytics tool without IP anonymization, Steward

shares with Google its patients' online activity relating to their private medical

treatment, along with patient IP addresses, although patients have not consented to

share such information.

**Steward's "DoctorFinder" Service**

71.     The "DoctorFinder" section of Steward's medical website also shares

patients' private health information directly with Google.

15

72.     Upon entering one of Steward's medical website <u>homepages</u>, patients may click the "DoctorFinder" link or the "Book Appointment" link, located at the top right-hand side of the page, to search for physicians, as shown in the image below.



73.     After selecting the "DoctorFinder" button or the "Book Appointment" button, patients are directed to the "<u>DoctorFinder</u>" page. On this page, patients can search for a provider by name, specialty, patient age group, location, language, gender, and technical criteria.



74.     Upon selecting their desired search options, patients are directed to the

search results page, from where they may select the doctor of their choice.



75.     As the patient sends search requests and views the resulting webpages, this information is automatically sent directly to Google.

76.     As shown in the image below using a hypothetical patient, Steward's site transmitted to Google the following: that the patient searched for a provider in **Massachusetts** who specializes in "**Vaginal cancer,**" sees **teenagers**, and is **accepting new patients**.



Request URL: https://www.google-analytics.com/j/collect?v=1&_v=j96&a=1328215564&t=pageview&_s=1&dl=https%3A%2F%2Fproviders.steward.org%2Fs%2Fprovider-search-results%3Ffilter%3Dadvanced%26bookable%3Dtrue%26searchTerm%3Dvaginal%2520cancer%26proximity%3D50%26location%3Dmassachusetts%252C%2520United%2520States%26ageGroup%3DTeenagers%26geolocation%3D42.3204700602%252C-71.9603257607071%2&newPatients%3Dtrue&dp=%2Fs%2Fprovider-search-results&ul=en-us&de=UTF-8&dt=DrFinder%20Search%20Results&sd=24-bit&sr=1920x1080&vp=1221x1239&je=0&_u=QACAAUABAAAAAC~&jid=1842434111&gjid=1112357313&cid=446140736.1649936098&tid=UA-109686952-1&_gid=1511189349.1650188696&_r=1&gtm=2ou4d0&z=543922007

Request Method: POST

Status Code: ● 200

77.    As shown in the image below, Steward transmitted to Google that a patient clicked on the profile page of the obstetrics and gynecology physician Patricia Chernosky.





78.    An HTTP single communication session is sent automatically from the patient's device to Google, revealing the specific physician's name.

19

Request URL: https://www.google-analytics.com/j/collect?v=1&_v=j96&a=1328215564&t=pageview&_s=2&dl=https%3A%2
F%2Fproviders.steward.org%2Fs%2Faffiliation%2Fa0d5Y00001WQymEQAT%2Fpatricia-chernosky-123-summer-street-suit
e-587-worcester-ma-01608-saint-vincent&dp=%2Fs%2Faffiliation%2Fa0d5Y00001WQymEQAT%2Fpatricia-chernosky-123-su
mmer-street-suite-587-worcester-ma-01608-saint-vincent&ul=en-us&de=UTF-8&dt=Affiliation%20Detail&sd=24-bit&sr
=1920x1200&vp=1221x1239&je=0&_u=SACAAUABAAAAAC~&jid=2082125507&gjid=1552086686&cid=446140736.1649936098&tid=
UA-109686952-1&_gid=1511189349.1650188696&_r=1&gtm=2ou4d0&z=1708715513

**Request Method:** POST

**Status Code:** ● 200

79.      The above information, combined with the patient's IP address, allows

Google to identify the person who has submitted this information through Steward's

website.

**Steward Breaches Its Privacy Policy By Its Unauthorized, Undisclosed Sharing Of
Patient Health Information with Meta and Google**

80.      Patients' activity on Steward's medical website system, including pages

accessed and links clicked, are private communications patients direct to Steward. By

embedding the Meta Pixel and Google Analytics tools source codes into its medical

website system, Steward is disclosing to Google and Facebook the contents of those

communications.

81.      Steward's <u>Patient Privacy Policy</u> fails to disclose that the sites track the

activities of site visitors and shares their personal information with Google and

Facebook. Although the Patient Privacy Policy provides an extensive list of the ways in

which Steward may use and disclose health information about its patients, it makes no

mention that it uses web bugs, including Meta Pixel and Google Analytics, to track and

automatically transmit communications to Meta and Google.

82.      Steward's Privacy Policy explicitly states that:

We are required by law to protect the privacy of any medical information
that identifies you... . We must also obtain your Authorization prior to

20

using or disclosing your medical information to send you any marketing materials...In addition, we are prohibited from selling your medical information without your written authorization to do so.

83.     The Privacy Policy also states that "[f]or any purpose other than the ones described...we may only use or share your medical information when you grant us your written permission."

84.     But in direct contravention of its Privacy Policy, Steward uses Meta Pixel and Google Analytics to gather medical information about Plaintiff Jane Doe and putative class members and disclose it to Meta and Google without patients' consent.

85.     The web pages that are being presented to the patient and the patient's interactions with the website are communications between Steward and its patients.

86.     Steward allows Meta and Google to intercept those communications by embedding Meta Pixel and Google Analytics on its websites.

<strong>Applicable Massachusetts Law</strong>

**The Wiretap Act**

87.     Massachusetts General Laws c. 272, § 99 prohibits any person from willfully and secretly intercepting the contents of any wire communication by using any intercepting device unless given prior authority by all parties to a communication to do so.

88.     The Wiretap Act provides a civil remedy "against any person who so intercepts, discloses, or uses such communications or who so violates his personal, property, or privacy interest." c. 272, § 99Q.

89.     An "interception" under the statute "means to secretly hear, secretly record, or aid another to secretly hear or secretly record the contents of any wire ... communication through the use of any intercepting device by any person other than a person given prior authority by all parties to such communication[.]" c. 272, § 99(4).

90.     An "intercepting device" is "any device or apparatus which is capable of transmitting, receiving, amplifying, or recording a wire ... communication[.]" c. 272, § 99(3).

91.     "[C]ontents" includes "any information concerning the identity of the parties to such communication or the existence, contents, substance, purport, or meaning of that communication." c. 272, § 99B(5).

92.     Prevailing plaintiffs are "entitled to recover ... "(1) actual damages' but not less than liquidated damages computed at the rate of $100 per day for each day of violation or $1,000, whichever is higher; (2) punitive damages; and (3) a reasonable attorney's fee and other litigation disbursements reasonably incurred." c. 272, § 99Q.

**Invasion of Privacy**

93.     G.L. c. 214, § 1B, provides that "a person shall have a right against unreasonable, substantial, or serious interference with his privacy. The superior court shall have jurisdiction in equity to enforce such a right and in connection therewith to award damages."

94.     G.L. c. 111, § 70E provides that every patient or resident of a Massachusetts health care facility shall have the right "to confidentiality of all records and communications to the extent provided by law."

95.     HIPAA prohibits disclosure of individually identifiable health
information ("IIHI"). HIPAA's privacy rule defines IIHI as information that relates to:

an individual's past, present, or future physical or mental health or
condition;

an individual's provision of health care; or

past, present, or future payment for the provision of health care to an
individual.

Identifies the individual or that there is a reasonable basis to believe that it
can be used to identify the individual.

Is created or received by a health care provider, health plan, employer, or
health care clearinghouse.

96.     HIPAA's security rule defines protected health information ("PHI") as
information that is transmitted or maintained in electronic, written, or oral form. 45
C.F.R. §160.103.

97.     On December 1, 2022, the Office for Civil Rights of the U.S. Department of
Health and Human Services issued a bulletin to highlight the obligations of HIPAA-
covered entities using "online tracking technologies," as Steward does.

98.     These technologies include pixels, fingerprinting scripts, cookies and web
beacons, code that tracks and profiles users' online activities and discloses the collected
user data to technology vendors for marketing purposes without HIPAA-compliant
authorization.

99.     The HHS Bulletin states: "Regulated entities are not permitted to use
tracking technologies in a manner that would result in impermissible disclosures of

protected health information (PHI) to tracking technology vendors or any other violations of the HIPAA Rules."

**Fiduciary Duty to Maintain Patient Confidentiality**

100.    As a medical provider for Plaintiff and Class Members, Steward owes its patients a fiduciary duty of confidentiality in providing health care and in maintaining patients' health information.

101.    All health care providers owe their patients a duty not to disclose medical information about the patient without the patient's informed consent.

<strong>Class Allegations</strong>

102.    The class is composed of all Massachusetts residents who:

(i)     are current Steward patients or were Steward patients at any time since March 31, 2016; and

(ii)    used any of Steward's medical websites to search for or communicate information concerning the symptoms, diagnosis or treatment of a medical condition, to use the "doctor finder" feature, or to schedule an appointment.

103.    The Class Period begins on March 31, 2016 and ends on the date when a class is certified in this case.

104.    Based on the volume of patient use of Steward's medical websites, the prospective class numbers more than 100,000, making joinder of all members impracticable. The exact size of the proposed class and the identity of the class members are readily ascertainable from Steward's business records.

24

105.    There are questions of law and fact common to the class, which predominate over any questions affecting only individual class members. The principal common issues regarding the class include whether:

    a.    Steward's use of Meta Pixel and/or Google Analytics was without patient consent or authorization;

    b.    Steward obtained and shared or caused to be obtained and shared Plaintiff's and Class members' PHI and/or IIHI through tracking using Meta Pixel and/or Google Analytics;

    c.    Steward's practices relating to disclosures of Plaintiff's and Class Members' communications with Steward to Meta and/or Google attached to PHI and/or IIHI were intentional;

    d.    Steward profited from the disclosures to Meta and/or Google;

    e.    Steward's practices relating to disclosures of Plaintiff's and Class Members' communications with Steward to Meta and Google attached to PHI and/or IIHI violate G.L. c. 272, § 99, c. 214, § 1B, and/or c. 111, § 70E;

    f.    Steward's practices constitute a breach of fiduciary duty;

    g.    Steward's conduct harmed and continues to harm Plaintiff and Class Members, and, if so, the extent of injury.

106.    There are no difficulties likely to be encountered by the Court in the management of this proposed class action. There are no individual questions, other than those which can be determined by ministerial inspection of Steward's records, and the issues of liability are determinable entirely from the face of the operative documents.

107.    The Plaintiff's claims are typical of those of the class she seeks to represent, and she will fairly and adequately protect and represent the interests of the class. There is no conflict between Plaintiff and the proposed class.

108.     A class action is superior to other methods for the fair and efficient adjudication of this controversy. Because the damages suffered by the individual class members may be relatively small compared to the expense and burden of litigation, it would be impractical and economically unfeasible for class members to seek redress individually. In addition, it is likely that most class members are unaware that they have claims. Finally, the prosecution of separate actions by the individual class members, even if possible, would create a risk of inconsistent or varying adjudications regarding the individual class members against Steward.

109.     Plaintiff is represented by counsel competent and experienced in both consumer protection and class action litigation.

110.     Steward has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

### Tolling Of Statutes Of Limitation

111.     All applicable statutes of limitation have been tolled by Steward's knowing and active concealment of the facts alleged in this Complaint.

112.     Plaintiff and Class members could not have reasonably discovered Steward's practice of sharing their PHI and/or IIHI with Meta and/or Google until shortly before this class action was filed.

113.     Steward was and remains under a continuing duty to disclose to Plaintiff and Class members its practice of sharing PHI and/or IIHI with Meta and/or Google.

114.    As a result of Steward's active concealment, all applicable statutes of limitation have been tolled.

### Claims For Relief

### Count I: Violation Of the Wiretap Statute

115.    Steward is a person as defined by the Wiretap Act.

116.    All communications between Plaintiff or Class Members and Steward qualify as wire communications under Massachusetts law because each communication is made using personal computing devices (e.g., computers, smartphones, tablets) that send and receive communications in whole or in part through the use of facilities used for the transmission of communications aided by wire, cable, or other like connections.

117.    Steward engaged and continues to engage in an "interception" by aiding Meta and Google to secretly record the contents of Plaintiff's and Class Members' wire communications.

118.    The "intercepting devices" used in this case include, but are not limited to:

Plaintiff's and Class Members' personal computing devices;

Plaintiff's and Class Members' web-browsers;

Plaintiff's and Class Members' browser-managed files;

Internet cookies;

Steward's own computer servers;

the third-party source code embedded on Steward's websites; and

the computer servers of Meta and Google, to which Plaintiff's and Class Members' communications were redirected.

27

119.    Steward aided in and continues to aid in the interception of contents in that the data from the communications exchanged between Plaintiff or Class Members and Steward that were redirected to and recorded by Meta and Google include information which identifies the parties to each communication, their existence, and the exact contents of such communications.

120.    Steward aided in the interception of "contents" in at least the following forms:

The parties to the communications;

The precise text of patient search queries;

The precise text of patient communications about specific doctors;

The precise text of patient communications about specific medical conditions;

The precise text of patient communications about specific treatments;

The precise text of patient communications about billing and payment;

The precise text of specific buttons that patients click to exchange communications at the property, including Log-In, Register, Request an Appointment, Search, and other buttons;

The precise dates and times when patients click to Log-In from the Steward patient medical websites;

Information that is a general summary or informs the third parties of the general subject of communications that Steward sends back to patients in response to search queries and requests for information about specific doctors, conditions, treatments, billing, payment, and other information; and

Any other content Steward aids Meta and Google in scraping from the internet.

## Count II: Violation Of the Privacy Statutes

121.    Steward owes Plaintiff and Class Members a duty of confidentiality.

122.    Despite its statutory duty not to disclose IIHI or PHI without informed consent, Steward disclosed such information relating to Plaintiff's and Class Members' medical treatment to Meta and Google without the patient's knowledge or informed consent.

123.    The information disclosed included Plaintiff's and Class Members' status as Steward patients and the exact contents of communications exchanged between Plaintiffs or Class Members and Steward, including but not limited to information about log-ins to Steward's patient medical website, treating doctors, potential doctors, conditions, treatments, appointments, search terms, and bill payment.

124.    The disclosure of personally identifiable medical information constitutes an unreasonable, substantial, and serious interference with Plaintiffs' and Class Members' rights to privacy, in violation of G.L. c. 214, § 1B and c. 111, § §70E.

125.    Steward's violations of the privacy statutes injured Plaintiff and Class Members.

## Count III: Breach Of Fiduciary Duty

126.    Steward breached its fiduciary duty of confidentiality by disclosing PHI and IIHI about Plaintiff's and Class Members' and the exact content of their communications with Steward.

127.    Steward's breach injured Plaintiff and Class Members in the following ways:

Sensitive and confidential information that Plaintiff and Class Members intended to remain private is no longer private;

Steward eroded the essential confidential nature of the provider-patient relationship;

Steward took something of value from Plaintiff and Class Members and derived benefit therefrom without Plaintiff's and Class Members' knowledge or informed consent and without sharing the benefit of such value;

Plaintiff and Class Members did not get the full value of the medical services for which they paid, which included Steward's duty to maintain confidentiality; and

Steward's actions diminished the value of Plaintiff's and Class Members' personal information.

### Request For Relief

WHEREFORE, Plaintiff, individually and on behalf of all Class Members, requests that the Court:

Certify the proposed class, appoint Plaintiff as class representative and Plaintiff's counsel as class counsel;

Permanently enjoin Steward from continuing the unlawful practices alleged in this Complaint;

Order Steward to pay both pre-judgment and post-judgment interest on any amounts awarded;

Award costs and reasonable attorneys' fees;

Declare Steward's business practices alleged in the Complaint to be unlawful; and

Order such other or further relief as may be appropriate.

### Demand For Jury Trial

Plaintiff hereby demands a jury trial for all claims so triable.

Dated: January 23, 2023

Respectfully submitted,


/s/ John Roddy
John Roddy (BBO No. 424240)
Elizabeth Ryan (BBO No. 549632)
Bailey & Glasser LLP
176 Federal Street, 5th Floor
Boston, MA 02110
(617) 439-6730
(617) 951-3954 (fax)
jroddy@baileyglasser.com
eryan@baileyglasser.com


Don Bivens (*pro hac vice* to be submitted)
Don Bivens, PLLC
Scottsdale Quarter
15169 N. Scottsdale Road, Suite 205
Scottsdale, AZ 85254
(602) 708-1450
don@donbivens.com


I HEREBY ATTEST AND CERTIFY ON
April 6, 2023 , THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

John E. Powers, III
Acting Clerk Magistrate
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT
BY:

Asst. Clerk

Date Filed 1/23/2023 1:43 PM
Superior Court - Suffolk
Docket Number



| CIVIL ACTION COVER SHEET | DOCKET(s) B.L.S. 23-0174 | Trial Court Of Massachusetts Superior Court Department County: SUFFOLK |
|---|---|---|
| PLAINTIFF(S)<br>Jane Doe | | DEFENDANT(S)<br>Steward Health Care System LLC |
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE Board of Bar Overseers number<br>John Roddy, Bailey & Glasser, LLP, 176 Federal Street, 5th Floor, Boston, MA 02110 617.439.6730 BBO # 424240 | | ATTORNEY (if known) |

Origin Code Original Complaint
Original

TYPE OF ACTION AND TRACK DESIGNATION (See reverse side) CODE NO. TYPE OF ACTION (specify) TRACK IS THIS A JURY CASE? * _____
_____ (B) ☑Yes ☐No

## Code No. - BK.1 / Type of Action - Consumer Class Action / Track -     / Jury Case - Yes

The following is a full and detailed statement of the facts on which plaintiff relies to determine eligibility in to The Business Litigation Session.

Steward Health Care System LLC operates an online portal through which patients at its ten Massachusetts' hospitals book appointments, describe symptoms, and disclose highly sensitive personal medical information intended only for their doctors and health services professionals. Plaintiff Jane Doe alleges that unbeknownst to the patients who use the portal, Steward shares their medical information with Meta Platforms, Inc. ("Meta") and with Google.

Steward's surreptitious sharing of private health information with Meta and Google violates the Massachusetts Wiretap Act, G.L. c. 272, § 99, as well as c. 214, §1B (right of privacy) and c. 111, §70E (patients' and residents' rights).

Plaintiff seeks statutory damages and injunctive relief on her own behalf and that of a class of an estimated 100,000 similarly situated Massachusetts residents.

* A Special Tracking Order shall be created by the Presiding Justice of the Business Litigation Session at the Rule 16 Conference.

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT.

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods." Signature of Attorney of Record _____
DATE: 1/23/2023

I HEREBY ATTEST AND CERTIFY ON
April 6, 2023 , THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

John E. Powers, III
Acting Clerk Magistrate
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT
BY: _____
Asst. Clerk

Date Filed 1/23/2023 1:43 PM
Superior Court- Suffolk
Docket Number

√ 1/31

*Notice sent*
*BA (1)*

3

NOTIFY

## COMMONWEALTH OF MASSACHUSETTS

**SUFFOLK, ss.**

**SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO.:**

23-0174-BLS1

|  |  |
|---|---|
| **Jane Doe, individually and on behalf of all others similarly situated,** | ) ) ) |
| **Plaintiff,** | ) ) |
| **v.** | ) ) |
| **Steward Health Care System LLC,** | ) ) |
| **Defendant.** | ) ) ) |

### Plaintiff's Motion to Proceed in Pseudonym

Plaintiff, by counsel, respectfully moves this Court to allow her to proceed in this action under the pseudonym Jane Doe. In support of this motion, Plaintiff states that through this action, Plaintiff seeks to remedy harms imposed due to the Defendant's conduct in sharing her private protected health information and individually identifiable health information with Meta Platforms, Inc.'s social media application, Facebook, and with Google, without her consent, and that further disclosure of her identity would only magnify the harm she has already suffered.

WHEREFORE, Plaintiff respectfully requests that the Court allow this motion and allow her to proceed in this action under the pseudonym Jane Doe.

Dated: January 23, 2023

*1/30/23 After review, ALLOWED. Plaintiff shall file a notice with the court disclosing plaintiff's true name and address. The notice shall be impounded in the interest of justice until the completion of this case or further order of the Court, and the notice shall be served on defendant (or provided to defense counsel if the complaint has already been served).*

Respectfully submitted,

/s/ John Roddy
John Roddy (BBO No. 424240)
Elizabeth Ryan (BBO No. 549632)
Bailey & Glasser LLP
176 Federal Street, 5th Floor
Boston, MA 02110
(617) 439-6730
(617) 951-3954 (fax)
jroddy@baileyglasser.com
eryan@baileyglasser.com

Don Bivens (*pro hac vice* to be submitted)
Don Bivens, PLLC
Scottsdale Quarter
15169 N. Scottsdale Road, Suite 205
Scottsdale, AZ 85254
(602) 708-1450
don@donbivens.com

I HEREBY ATTEST AND CERTIFY ON
April 6, 2023 , THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

John E. Powers, III
Acting Clerk Magistrate
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT
BY:
Asst. Clerk

NOTIFY

*Notice sent*
*BA (1)*

4

**Commonwealth of Massachusetts**
**County of Suffolk**
**The Superior Court – Business Litigation Session**

CIVIL DOCKET#: **2384CV00174-BLS1**

Case:   Jane Doe et al. v. Steward Health Care System LLC

## NOTICE OF ACCEPTANCE INTO BUSINESS LITIGATION SESSION

This matter has been accepted into the Suffolk Business Litigation Session. It has been assigned to **BLS1**.

Hereafter, as shown above, all parties must include the initials "**BLS1**" at the end of the docket number on all filings.

Counsel for the plaintiff(s) is hereby advised that within seven (7) days of the filing of an appearance, answer, motion or other response to the complaint by or on behalf of the defendant(s) which has been served with process within the time limitation of Mass. R. Civ. P. 4(j), or such other time as may be modified by the Court, he or she shall send notice thereof to the appropriate BLS Session Clerk at Suffolk Superior Court, Three Pemberton Square, Boston, MA 02108.

Upon receipt of such notice, the Court will issue a Notice of Initial Rule 16 Conference for purposes of meeting with all counsel.  Before the Rule 16 Conference, counsel shall discuss with their clients and with opposing counsel whether the parties will participate in the BLS Project on Discovery (counsel are directed to www.mass.gov/superior-court-business-litigation-session for description of the Project).  Counsel may indicate their respective client's participation by completing, filing, and serving the attached form.  If by the date of the initial Rule 16 Conference, not all parties have given notice of their participation, counsel shall be prepared to discuss at that conference whether their clients will participate in the Project.

The Court requests that plaintiff's counsel serve on opposing parties a copy of this notice and the attached form.

Dated:  January 24, 2023

/s/ Kenneth W. Salinger
_____
Kenneth W. Salinger
Justice of the Superior Court &
Administrative Justice of the Business Litigation Session

I HEREBY ATTEST AND CERTIFY ON
April 6, 2023        , THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

John E. Powers, III
Acting Clerk Magistrate
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____
    Asst. Clerk

**Commonwealth of Massachusetts**
**County of Suffolk**
**The Superior Court – Business Litigation Session**

CIVIL DOCKET#: _____

Case: _____

 

As you may know, the Business Litigation Session began implementing a Discovery Project in January, 2010. This project is available on a voluntary basis for all new cases accepted into the BLS and for cases which have not previously had an initial case management conference. Counsel should be prepared to discuss the project with the Court at the initial case management conference. For a detailed copy of the BLS Discovery Project, counsel are directed to the Trial Court home page at: www.mass.gov/superior-court-business-litigation-session)

If a party is willing to participate in the project, that party's counsel should so indicate below and return this form to the appropriate session clerk.

____ (Check) **Yes,**_____ is willing to participate in the Discovery Project.
(Party's Name)

Case Name _____

Docket Number CIVIL DOCKET#: _____

Counsel For_____        Date_____

Firm Name and Address:

_____

_____

_____

Please complete this form and return it to:

| | | |
|---|---|---|
| Assistant Clerk - BLS1 | **OR** | Assistant Clerk - BLS2 |
| BLS1, Room 1309 | | BLS2, Room 1017 |
| 3 Pemberton Square | | 3 Pemberton Square |
| Boston, MA 02108 | | Boston, MA 02108 |

- 2 -

Date Filed 3/9/2023 4:20 PM
Superior Court - Suffolk
Docket Number 2384CV00174

5

| **Summons** | CIVIL DOCKET NO.<br>2384CV00174-BLS1 | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

CASE NAME:

Jane Doe, individually and on behalf of all others similarly situated,

Plaintiff(s)

vs.

Steward Health Care System LLC,

Defendant(s)

John E. Powers, III,  Clerk of Courts
Suffolk  County

COURT NAME & ADDRESS:

Suffolk Superior Court
Business Litigation Session
BLS1, Room 1309
3 Pemberton Square
Boston, MA 02108

THIS SUMMONS IS DIRECTED TO   Steward Health Care System LLC   (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this Summons and the original Complaint has been filed in the   Suffolk Superior   Court.
**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

**1. You must respond to this lawsuit in writing within 20 days.**
If you do not respond, the Court may decide the case against you and award the Plaintiff everything asked for in the Complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

**2. How to Respond.**
To respond to this lawsuit, you must file a written response with the Court **and** mail a copy to the Plaintiff's attorney (or the Plaintiff, if unrepresented). You can do this by:

a) Filing your **signed original** response with the Clerk's Office for Civil Business,   Suffolk Superior   Court BLS1, Room 1309, 3 Pemberton Square, Boston, MA 02108 (address), by mail, in person, or electronically through the web portal www.eFileMA.com if the Complaint was e-filed through that portal, **AND**

b) Delivering or mailing a **copy** of your response to the Plaintiff's attorney/Plaintiff at the following address:
John Roddy, Bailey & Glasser LLP, 176 Federal Street, 5th Floor, Boston, MA 02110

**3. What to Include in Your Response.**
An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in Court. If you have any claims against the Plaintiff (referred to as "counterclaims") that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Court no more than 10 days after sending your Answer.

Date Filed 3/9/2023 4:20 PM
Superior Court – Suffolk
Docket Number 2384CV00174

3. (cont.) Another way to respond to a Complaint is by filing a "Motion to Dismiss," if you believe that the Complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Rule 12 of the Massachusetts Rules of Civil Procedure.** If you are filing a Motion to Dismiss, you must follow the filing rules for "Civil Motions in Superior Court," available at:

www.mass.gov/law-library/massachusetts-superior-court-rules

### 4. Legal Assistance.

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

### 5. Required Information on All Filings.

The "Civil Docket No." appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Heidi E. Brieger _____ , Chief Justice on _____ January 23 , 20 23 . (Seal)

Clerk _____

**Note:** The docket number assigned to the original Complaint by the Clerk should be stated on this Summons before it is served on the Defendant(s).

---

PROOF OF SERVICE OF PROCESS

I hereby certify that on _____ , I served a copy of this Summons, together with a copy of the Complaint

**Suffolk County Sheriff's Department** • 132 Portland Street, Boston, MA 02114 • (617) 704-6999

*Suffolk, ss.*

March 7, 2023

I hereby certify and return that on 3/6/2023 at 8:50 AM I served a true and attested copy of the Summons, Complaint, Notice and Cover Sheet in this action in the following manner: To wit, by delivering in hand to Ross DePina, Process Clerk, agent and person in charge at the time of service for Steward Health Care System LLC, at CT Corporation System 155 Federal Street Suite 700 Boston, MA 02110 . Attest/Copies ($5.00) Basic Service Fee (IH) ($30.00) Conveyance ($0.30) Postage and Handling ($1.00) Travel ($1.00) Total: $37.30

Deputy Sheriff    Joseph Casey

I HEREBY ATTEST AND CERTIFY ON April 6, 2023 , THAT THE FOREGOING DOCUMENT IS A FULL, TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE IN MY OFFICE, AND IN MY LEGAL CUSTODY.

John E. Powers, III
Acting Clerk Magistrate
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT
BY: _____

Asst. Clerk

_____
Deputy Sheriff

Date.

rev. 7/2022

Date Filed 4/5/2023 4:30 PM
Superior Court - Suffolk
Docket Number 2384CV00174

BL

6

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                     SUPERIOR COURT DEPARTMENT
                                                 CIVIL ACTION NO. 2384CV00174-BLS1

_____
                                    )      US Dist # 23-CV-10711
JANE DOE, Individually and on behalf of all  )
others similarly situated,          )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )
                                    )
STEWARD HEALTH CARE SYSTEM LLC,     )
                                    )
        Defendant.                  )
_____   )

### NOTICE TO STATE COURT OF
### FILING OF NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1442, Defendant Steward Health Care System LLC

("Defendant") hereby gives notice to Superior Court of Suffolk County, Massachusetts and to the

Plaintiff Jane Doe, Individually and on behalf of all other similarly situated, that Defendant has

filed a Notice of Removal, thereby removing the above-captioned action to the United States

District Court for the District of Massachusetts.  A copy of the Notice of Removal and the

corresponding Notice of Electronic Filing are attached hereto as Exhibit A.

Respectfully submitted,

STEWARD HEALTH CARE SYSTEM LLC,

By its attorneys,


/s/ Ian Pinta
Howard M. Cooper (BBO No. 543842)
Ingrid S. Martin (BBO No. 653632)
Ian J. Pinta (BBO No. 667812)
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA 02110
617-720-2626
hcooper@toddweld.com
ipinta@toddweld.com

Dated: April 3, 2023


## CERTIFICATE OF SERVICE

I, Ian J. Pinta, do hereby certify that on this 3rd day of April, 2023, I caused the foregoing to be served via electronic mail and overnight mail upon counsel of record for the Plaintiff.

John J. Roddy, Esq.
Elizabeth A. Ryan, Esq.
Bailey & Glasser LLP
176 Federal Street
Boston, MA 02110
jroddy@baileyglasser.com
eryan@baileyglasser.com


/s/ Ian Pinta
Ian J. Pinta


I HEREBY ATTEST AND CERTIFY ON
April 6, 2023                , THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

John E. Powers, III
Acting Clerk Magistrate
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT
BY: _____
Asst. Clerk

2

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JANE DOE, Individually and on behalf of all others similarly situated, )<br><br>    Plaintiff, )<br><br>v. )<br><br>STEWARD HEALTH CARE SYSTEM LLC, )<br><br>    Defendant. ) |   Certified to be a true and correct copy of the original<br>Robert M. Farrell, Clerk<br>U. S. District Court<br>District of Massachusetts<br>By: *Madison Quitta*<br>    Deputy Clerk<br><br>Date: 04/03/2023 |

## NOTICE OF REMOVAL

Defendant Steward Health Care System LLC ("Steward") hereby provides this Notice of Removal pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1).

Steward owns and operates hospitals and provides medical care to patients. As such, Steward has been subject to the federal government's directives to build a nationwide health information technology infrastructure. The Complaint filed by plaintiff Jane Doe ("Doe") challenges the legality of actions Steward has taken in connection with pursuing the government's directives. This case is therefore subject to removal under 28 U.S.C. § 1442(a)(1).

Indeed, other district courts have allowed removal by healthcare institutions like Steward defending against similar allegations. *See, e.g., Doe I v. UPMC*, No. 2:20-cv-359, 2020 WL 4381675 (W.D. Pa. July 31, 2020); *Doe v. ProMedica Health Sys., Inc.*, No. 3:20 CV 1581, 2020 WL 7705627 (N.D. Ohio Oct. 30, 2020).

In further support of removal, Steward provides the following "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a).

1

Date Filed 4/3/2023 4:30 PM
Superior Court - Suffolk
Docket Number 2384CV00174

Case 1:23-cv-10711-AK   Document 9   Filed 04/25/23   Page 45 of 59
Case 1:23-cv-10711-AK   Document 1   Filed 04/03/23   Page 2 of 16

## NATURE OF THE CASE

**Steward's Websites**

1.      On or about January 23, 2023, Doe filed a putative class action Complaint against Steward in the Superior Court of the Commonwealth of Massachusetts for the County of Suffolk, Case No. 2384CV00174-BLS1.

2.      Doe's Complaint asserts claims for Violation of the Massachusetts Wiretap Act (G.L. c. 272, § 99), Violation of Massachusetts Privacy Statutes (G.L. c. 214 § 1B, and G.L. c. 111, § 70E), and Breach of Fiduciary Duty.

3.      Doe alleges that Steward "is a private physician-owned healthcare network" and "operates 10 hospitals in Massachusetts." Complaint, ¶¶ 12, 19.

4.      Doe alleges that Steward "operates <u>websites</u> for its various medical facilities through which Steward patients book appointments, describe symptoms, and communicate highly sensitive personal medical information intended only for their doctors and health service professionals." *Id.*, ¶ 1 (emphasis in original).

5.      Doe alleges that, "[u]nbeknownst to the patients who use its medical websites, Steward shares patients' private protected health information ('PHI') and individually identifiable health information ('IIHI') with Meta Platforms, Inc.'s social media application, Facebook, and with Google." *Id.*, ¶ 2. According to Doe,

> Steward has deployed throughout its medical website system both Meta Pixel and Google Analytics, invisible programming code that tracks users' actions as they navigate through the medical website.
>
> Meta Pixel and Google Analytics are automatic re-routing programs. Meta Pixel causes the contents of patient communications exchanged with Steward to be simultaneously shared with Meta, disclosing the patient's PHI and IIHI.
>
> Google Analytics tracks both the patients' general search activity and their "DoctorFinder" search activity. Steward shares this activity along with the patients'

2

Date Filed 4/3/2023 4:30 PM
Superior Court - Suffolk
Docket Number 2384CV00174

Case 1:23-cv-10711-AK   Document 9   Filed 04/25/23   Page 46 of 59
Case 1:23-cv-10711-AK   Document 1   Filed 04/03/23   Page 3 of 26

IP addresses and other identifying information directly with Google, disclosing the patient's PHI and IIHI.

Steward does not obtain patients' consent to so share their PHI and IIHI and in fact does not disclose to its patients that it so shares this information with Meta and Google.

Meta and Google receive and store the contents of patient communications with Steward as they occur in real time, possibly before the full response from Steward has even appeared on the patient's computing device.

*Id.*, ¶¶ 4-8.

## Background on Federal Programs

6.      Since 2004, the federal government has taken substantial efforts to achieve "the nationwide implementation of interoperable health information technology in both the public and private health care sectors."[1]  These efforts included establishing an Office of the National Coordinator for Health Information Technology ("ONC") within the Department of Health and Human Services ("HHS") and appropriating billions of dollars of federal funds to "invest in the infrastructure necessary to allow for and promote the electronic exchange and use of health information for each individual in the United States consistent with the goals outlined in the strategic plan developed by the [ONC]." 111 Pub. L. No. 5, 123 Stat. 115, 246 (codified at 42 U.S.C. § 300jj-31).

7.      To achieve these objectives, the ONC has worked together with private healthcare providers like Steward to build the necessary electronic infrastructure.  Because private healthcare providers like Steward have direct access to patients, the government has worked directly with these providers to improve their "ability to influence patient engagement by

---

[1] Exec. Order No. 13,335, 69 Fed. Reg. 24,057 (Apr. 27, 2004), available at
https://www.govinfo.gov/content/pkg/WCPD-2004-05-03/pdf/WCPD-2004-05-03-Pg702.pdf

3

providing a wider range of technologies and methods for a patient's use." Medicare and

Medicaid Programs; Electronic Health Record Incentive Program-Stage 3 and Modifications to

Meaningful Use in 2015 Through 2017, 80 Fed. Reg. 62,761, 62,848 (Oct. 16, 2015). In fact, the

ONC issues guidance to providers, including guidance requiring "federal agencies" to

"collaborate with . . . private stakeholders to . . . [b]uild a culture of electronic health information

access and use."[2]

8.      To further the federal government's objective, it also included Medicare and

Medicaid Electronic Health Records (EHR) incentive and interoperability initiatives.  For

instance, in 2011 CMS established the Meaningful Use program to increase patients'

"meaningful use" of and engagement with their EHR.[3]  These and related programs (including

Merit-based Incentive Payment System (MIPS) and the Primary Care First program) offer

incentive payments to institutional and individual providers that prepare program reports and

demonstrate increased patient engagement.[4]  The patient engagement requirements include

implementing certified EHR technology based on federal standards to help patients access their

medical records.  *See* 45 C.F.R. §§ 170.102; 170.315.

---

[2] ONC, *Federal Health Information Technology Strategic Plan 2015-2020* 1, 8, available at
https://dashboard.healthit.gov/strategic-plan/federal-health-it-strategic-plan-2015-2020.php

[3] *See* CMS.gov, *Promoting Interoperability Programs,* available at
https://www.cms.gov/Regulations-and-Guidance/Legislation/EHRIncentivePrograms

[4] *See id.* (noting history of interoperability programs); CMS.gov, Traditional MIPS Overview,
available at https://qpp.cms.gov/mips/traditional-mips (describing promoting interoperability
component); CMS.gov, Promoting Interoperability Performance Category: Traditional MIPS
Requirements, https://qpp.cms.gov/mips/promoting-interoperability (detailing 2022 MIPS
requirements for Promoting Interoperability component).

9.      CMS recommends that providers create patient "portals" to help patients interact with providers and access their EHR.  Significantly, CMS directs providers to "actively promote and facilitate portal use."[5]

10.     To that end, HHS requires providers to demonstrate increased patient engagement over time.  Early on in the Meaningful Use program, providers could earn incentive payments if they did so.  Now, a failure to satisfy patient engagement or interoperability standards means reductions in Medicare and other federal program payments for services.  *See, e.g.,* 42 U.S.C. § 1395w-4(a)(7). For example, the Meaningful Use program set an objective for providers to "[p]rovide patients the ability to view online, download, and transmit their health information within 4 business days of the information being available to the [provider]." 42 C.F.R. § 495.22(e)(8)(i).  Providers had to demonstrate that a certain percentage of Medicaid patients could view, download, and transmit their health information to a third party (and that percentage threshold increased over time).  *Compare id.* § 495.22(e)(8) (50 percent in 2015), *with id.* § 495.24(d)(5)(i)(B) (80 percent in 2019).

11.     In addition to incentive programs, CMS provided an example of how to engage with patients by creating its own portal and promoting patient engagement through the use of third-party services on its websites.  By working with over two dozen third-parties,[6] CMS is able to "collect basic information about visits to Medicare.gov."  Medicare.gov, *Privacy Policy,*

---

[5] ONC, *How to Optimize Patient Portals for Patient Engagement and Meet Meaningful Use Requirements* (2013), available at
https://www.healthit.gov/sites/default/files/nlc_how_to_optimizepatientportals_for_patientengagement.pdf

[6] *See* Medicare.gov, *Privacy information regarding third-party services,* available at
https://www.medicare.gov/third-party-privacy-policies

Date Filed 4/3/2023 4:30 PM
Superior Court - Suffolk
Docket Number 2384CV00174

Case 1:23-cv-10711-AK   Document 9   Filed 04/25/23   Page 49 of 59
Case 1:23-cv-10711-AK   Document 9   Filed 04/03/23   Page 6 of 26

available at https://www.medicare.gov/privacy-policy.  CMS "use[s] third-party web services to

conduct outreach and education through the use of digital advertising for Medicare.gov."  *Id.*

These services include "the use of web beacons (also called pixels)," which CMS uses "to better

target Medicare advertisements." *Id.*

12.    CMS also engaged Facebook to "place[] a cookie or pixel . . . for conversion

tracking on certain pages of CMS website. [This] allows Facebook Ads to measure the

performance of CMS advertisements based on consumer activity and to report the ad

performance to CMS."[7]

## BASIS FOR REMOVAL

13.    Steward removes this action pursuant to the federal officer removal statute, which

permits removal when the defendant is "any officer (or any person acting under that officer) of

the United States or of any agency therefore, in an office or individual capacity, for or relating to

any act under color of such office …"  28 U.S.C. § 1442(a)(1).

14.    The federal officer removal statute is broadly construed, and a defendant can

remove under this statute when it acts under color of federal office.  *Colorado v. Symes*, 286 U.S.

510, 517 (1932); *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981).

15.    A defendant must show that (a) it is a "person" within the meaning of the statute

and "acting under a federal officer's authority"; (b) that the charged conduct was carried out "for

---

[7] *See* HHS, *Third Party Websites and Applications Privacy Impact Assessment –Facebook Ads*
(Sept. 4, 2018), available at https://www.hhs.gov/pia/third-party-websites-and-applications-pia-
facebook-
ads.html#:~:text=Conversion%20tracking%20allows%20Facebook%20Ads,the%20ad%20perfor
mance%20to%20CMS

Date Filed 4/3/2023 4:30 PM
Superior Court - Suffolk
Docket Number 2384CV00174

Case 1:23-cv-10711-AK   Document 9   Filed 04/25/23   Page 50 of 59
Case 1:23-cv-10711-AK   Document 1   Filed 04/03/23   Page 7 of 16

or relating to" the asserted official authority; and (c) the defendant can assert a "colorable federal defense." *Moore v. Elec. Boat Corp.*, 25 F.4th 30, 34 (1st Cir. 2022).

16.     Steward meets each of these requirements.  First, a limited liability company qualifies as a "person" under the statute, and Steward acted under federal officer authority because it developed its websites at the direction of the federal government which established a series of federal programs that sought to create a nationwide health information technology infrastructure.

17.     Second, Steward's alleged conduct at issue was carried out "for or relating to" the federal incentive and interoperability initiatives centered on Medicare and Medicaid, including without limitation the Meaningful Use program. Through these initiatives, the federal government provided monetary incentives and guidance to providers, including Steward, to enhance patient engagement and expand online access to their EHR.  Under that federal direction, Steward has gathered data demonstrating expanded patient access and improved patient engagement with EHR.

18.     Third, Steward intends to assert at least four (4) colorable federal defenses to Doe's claims, including without limitation (a) a federal question as to whether the information allegedly shared with Meta and Google is subject to HIPAA, as Doe alleges, (b) federal preemption, (c) *Buckman* preemption, and (d) the dormant Commerce Clause.

### Steward Is A Person Acting Under Federal Authority

19.     Federal officer removal can be effectuated by "any person acting under" a federal officer.  28 U.S.C. § 1442(a)(1).

20.     A limited liability company like Steward, *see* Complaint, ¶ 13, qualifies as a "person" under the statute. *See, e.g., Jones v. Posterity Arora Joint Venture, L.L.C.*, No. EP-18-

Date Filed 4/3/2023 4:30 PM
Superior Court - Suffolk
Docket Number 2384CV00174

Case 1:23-cv-10711-AK    Document 9    Filed 04/25/23    Page 51 of 59
Case 1:23-cv-10711-AK    Document 1    Filed 04/03/23    Page 8 of 16

CV-370-KC, 2019 WL 13254186, at *2 (W.D. Tex. Jan. 16, 2019); *St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc., LLC*, 809 F. Supp. 2d 524, 530 (E.D. La. 2011).

21.     The "acting under" element for federal officer removal is "broad[ly]" and "liberally construe[d]." *Moore*, 25 F.4th at 34 n.3. This element involves "an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Watson*, 551 U.S. at 152 (emphasis in original).

22.     Steward, on behalf of itself and its providers, "act[ed] under" federal authorities in multiple ways that Doe now challenges. Steward's hospitals and eligible providers have been longstanding participants in federal EHR incentive programs and initiatives, including without limitation the Meaningful Use program. Through their participation in these programs and otherwise, Steward has assisted (and continues to assist) the federal government in carrying out its goal of creating a nationwide EHR infrastructure.

23.     As part of those efforts, Steward ensured its websites met federal interoperability standards. Per government directive, Steward also filed reports with the government attesting to Steward's efforts to increase patient engagement.

24.     Steward even refined its websites (including with digital marketing tools) to drive and analyze patient engagement and to ultimately increase patient access to EHR. The federal government itself used the same digital marketing tools to enhance patient engagement that Steward used and that Doe now challenges.

25.     Steward's actions followed the guidelines and directives of the ONC, which closely monitors how providers like Steward can help achieve the government's goal of promoting patient engagement. In return, the government has granted Steward and its providers

Date Filed 4/3/2023 4:30 PM
Superior Court - Suffolk
Docket Number 2384CV00174

Case 1:23-cv-10711-AK   Document 9   Filed 04/25/23   Page 52 of 59
Case 1:23-cv-10711-AK   Document 1   Filed 04/05/23   Page 9 of 16

payments through various federal programs and initiatives. Such exchanges are similar to a government-contractor relationship. *See Moore,* 25 F.4th at 34 n.3.

26.   In *Doe I v. UPMC,* where the plaintiffs made nearly identical allegations and asserted similar claims against the University of Pittsburg Medical Center, "UPMC, as a participant in the Meaningful Use Program, receive[d] incentive payments from DHHS for its development and use of the UPMC website and the MyUPMC portal in accordance with the program's criteria. In particular, UPMC must, among other things, raise awareness and increase usability of the UPMC website and the MyUPMC portal." *UPMC*, 2020 WL 4381675, at *6 (citations omitted). The Court held that UPMC was "'acting under' a federal superior for purposes of the federal officer removal statute" because the "Complaint addresses the design and functionality of UPMC's website and patient portal, implicating UPMC's implementation of the Meaningful Use Program, particularly as the implementation involves patient engagement and usership." *Id. See also ProMedica Health Sys., Inc.*, 2020 WL 7705627, at *3 ("The aim of [Promoting Interoperability Programs] is to create a unified system of patient electronic health records. Because Defendant's participation assisted the federal government in achieving that goal, Defendant has satisfied the 'acting under' prong.").

27.   Put simply, the federal government would not be able to "carry out" these important federal healthcare initiatives without direct participation by providers like Steward, which was compensated for doing same. *See Watson,* 551 U.S. at 152.

**Steward's Alleged Conduct Was Carried Out For Or Related To Federal Authority**

28.   The "for or relating to" element requires that Doe's claims be "relate[d] to" actions Steward took while "acting under" federal authority. *See Moore,* 25 F.4th at 35-36. "In 2011, Congress amended § 1442(a)(1) to allow removal based on a suit 'for or relating to any act

9

ate Filed 4/3/2023 4:30 PM
uperior Court - Suffolk
ocket Number 2384CV00174

Case 1:23-cv-10711-AK   Document 9   Filed 04/25/23   Page 53 of 59
Case 1:23-cv-10711-AK   Document 1   Filed 04/03/23   Page 10 of 16

under color of [federal] office,'" and since then "[c]ircuits have consistently given this requirement a broad reading and held that no causal link is required." *Id.* at 35 (emphasis in original). "Any single claim is independently sufficient to satisfy the 'for or relating to' requirement under § 1142(a)(1)." *Id.*

29.     Each of Doe's claims challenge Steward for its actions that "relat[e] to" the work Steward performed designing and administering its websites while acting under federal authority. Doe alleges she "has used the Steward medical website to book appointments, enter search queries regarding symptoms, certain health 'conditions, and health professionals, and otherwise exchange communications with Steward relating to her particular medical providers and medical condition." Complaint, ¶ 26.

30.     In particular, Doe focuses on Steward's use of Meta Pixel and Google Analytics. With respect to Meta Pixel, Doe alleges that "Meta Pixel is a species of lx1 pixels (the smallest dot on a user's screen) called a tracking pixel, or a web-bug. . . . Meta Pixel allows website owners to track visitor activity on their website and measure the effectiveness of advertising." *Id.*, ¶¶ 45-46. With respect to Google Analytics, Doe alleges "Google Analytics is a web analytics service which allows website owners to track visitor actions on their website to target them with personalized advertisements." *Id.*, ¶ 59.

31.     Doe thus challenges the development of Steward's websites which help promote patient engagement with EHR. Indeed, other courts agree that this type of challenged conduct "relat[es] to" a provider's work with the federal government. *See UPMC*, 2020 WL 4381675, at *6 ("Plaintiffs' allegations target mechanisms by which UPMC manages and markets its website and patient portal. There is plainly a connection or association between UPMC's website management and marketing strategies and the Meaningful Use program, particularly the

10

ate Filed 4/3/2023 4:30 PM
uperior Court - Suffolk
ocket Number 2384CV00174

Case 1:23-cv-10711-AK   Document 9   Filed 04/25/23   Page 54 of 59
Case 1:23-cv-10711-AK   Document 1   Filed 04/03/23   Page 11 of 16

incentives that are tied to patient participation and usability. Plaintiffs' claims are therefore 'for

or relating to' an act under color of federal office."); *ProMedica Health Sys., Inc.*, 2020 WL

7705627, at *3.

**Steward Has A Colorable Federal Defense**

32.     The final element for removal under Section 1442 requires that Steward assert a

single "colorable federal defense." *See Mesa v. California,* 489 U.S. 121, 129-30 (1989).

Steward has at least four (4).

33.     A federal defense is "colorable" if it is not "wholly insubstantial and frivolous,"

even if it is not "clearly sustainable." *Moore,* 25 F.4th at 37 (quotations and citations omitted).

When assessing whether a federal defense is colorable, "the burden is low, and the requirement

has generally not proven an obstacle[.]" *Id.* at 36 (quotations and citation omitted).

34.     First, federal officer removal is allowed where "it appears that a Federal question

or a claim to a Federal right is raised in the case, and must be decided therein." *UPMC*, 2020 WL

4381675, at *6 (quotations and citations omitted).   HIPAA underlies all of Doe's claims but,

contrary to her allegations, the allegedly disclosed information was not protected under HIPAA.

35.     Relying on and specifically citing to HIPAA, Doe alleges that "federal law

protect[s] the confidentiality of a Patient's private health records and communications, and

strictly limit[s] the disclosure of such information without consent." Complaint, ¶ 3. *See also id.*

("Regulations promulgated under HIPAA define IIHI as health information that can be linked to

a specific person and PHI as IIHI that is transmitted by or maintained in electronic media as well

as any other form or medium. See 45 CFR 46.160.103.").

36.     Doe's invasion of privacy claims are based specifically on HIPAA, which Doe

makes great efforts to substantiate.   According to Doe:

11

ate Filed 4/3/2023 4:30 PM
uperior Court - Suffolk
ocket Number 2384CV00174     Case 1:23-cv-10711-AK   Document 9   Filed 04/25/23   Page 55 of 59
Case 1:23-cv-10711-AK   Document 1   Filed 04/03/23   Page 12 of 16

HIPAA prohibits disclosure of individually identifiable health information ("IIHI"). HIPAA's privacy rule defines IIHI as information that relates to:

> an individual's past, present, or future physical or mental health or condition;
>
> an individual's provision of health care; or
>
> past, present, or future payment for the provision of health care to an individual.
>
> Identifies the individual or that there is a reasonable basis to believe that it can be used to identify the individual.
>
> Is created or received by a health care provider, health plan, employer, or health care clearinghouse.

HIPAA's security rule defines protected health information ("PHI") as information that is transmitted or maintained in electronic, written, or oral form. 45 C.F.R. §160.103.

On December 1, 2022, the Office for Civil Rights of the U.S. Department of Health and Human Services issued a bulletin to highlight the obligations of HIPAA-covered entities using "online tracking technologies," as Steward does.

These technologies include pixels, fingerprinting scripts, cookies and web beacons, code' that tracks and profiles users' online activities and discloses the collected user data to technology vendors for marketing purposes without HIPAA-compliant authorization.

The HHS Bulletin states: "Regulated entities are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of protected health information (PHI) to tracking technology vendors or any other violations of the HIPAA Rules."

Complaint, ¶¶ 95-99.

37.     Doe also alleges repeatedly that Steward unlawfully shared patients' IP addresses with Meta and Google, *id.*, ¶¶ 6, 42, 64, and that "HIPAA deems an IP address to be personally identifiable data. 45 C.F.R. § 164.514(b)(2)(i)(0)." *Id.*, ¶ 66.

38.     In *UPMC*, "Plaintiffs ma[de] several allegations related to HIPAA." *UPMC*, 2020 WL 4381675, at *6. Like Doe, "[c]iting HIPAA, Plaintiffs allege[d] . . . that 'a health care

ate Filed 4/3/2023 4:30 PM
uperior Court - Suffolk
ocket Number 2384CV00174

provider may not disclose personally identifiable information about a patient, potential patient, or household member of a patient for marketing purposes without the patient's express written authorization.'" *Id.* Like Doe, "Plaintiffs allege[d] that under HIPAA, an IP address is considered personally identifiable information, and that cookies and browser fingerprints are protected personal identifiers." *Id.* Like Steward does here, UPMC argued in its Notice of Removal that it would "argue 'that the data at issue—the content of web searches, IP addresses, cookies, and browser fingerprints—are not subject to HIPAA.'" *Id.* Accordingly, the Court held that "Plaintiffs plainly allege[d] that UPMC ha[d] a federal duty under HIPAA and that UPMC violated that duty. Because UPMC denies violating its duties under HIPAA, UPMC raise[d] a colorable federal defense." *Id. See also ProMedica Health Sys., Inc.*, 2020 WL 7705627, at *3 ("Defendant argues that it will raise preemption defenses, including [HIPAA]. A defense based on federal preemption of state law is sufficient to raise a colorable federal defense for the purposes of the federal officer removal statute. Without reaching the merits of these defenses, which would be improper at this stage, this Court notes that either defense would require the interpretation of federal law and are colorable on their face. Because of this, Defendant has met the third and final prong.").

39.    Second, Steward intends to argue that HIPAA preempts the Massachusetts laws upon which Doe relies, in whole or in part. *See* 45 C.F.R. § 160.203. Deciding that question necessarily requires interpreting and applying federal law. *UPMC*, 2020 WL 4381675, at *7 ("UPMC contends that 'certain state-law privacy standards are preempted under HIPAA.' . . . Whether or not that is true is for a federal court to decide, as it will require the interpretation of a federal statute."); *see also United States ex rel. Health Outcomes Techs., Inc. v. Hallmark Health*

ate Filed 4/3/2023 4:30 PM
uperior Court - Suffolk
ocket Number 2384CV00174 Case 1:23-cv-10711-AK   Document 9   Filed 04/25/23   Page 57 of 59
Case 1:23-cv-10711-AK   Document 1   Filed 04/03/23   Page 14 of 16

*Sys., Inc.*, No. CV 01-11375-NMG, 2005 WL 8175864, at *1 (D. Mass. Dec. 8, 2005) (finding

that HIPAA, as a federal law, can preempt state law).

40.    Third, Doe's state law claims are preempted in whole or in part under *Buckman*

*Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001), which held that federal preemption

applies where the relationship between defendant and the government is "inherently federal in

character because the relationship . . . originates from, is governed by, and terminates according

to federal law." Federal district courts are the proper forum for evaluating *Buckman* preemption

defenses. *Id.; see also UPMC*, 2020 WL 4381675, at *7 ("UPMC argues that the nature of its

involvement in DHHS's Meaningful Use Program is inherently federal. . . . UPMC thus contends

it is entitled to federal judicial review to assess allegations that implicate its relationship with

DHHS and involvement in the Meaningful Use Program. . . . Having already found that UPMC

was 'acting under' DHHS when it engaged in the complained-of conduct, it follows that the

relationship between UPMC and DHHS is 'inherently federal' in nature, such that the issue of

whether Plaintiffs' state-law claims are preempted under the principles articulated in *Buckman*

should be decided by a federal court.").

41.    Fourth, Steward has a colorable federal defense under the dormant Commerce

Clause, which "prohibits state laws that unduly restrict interstate commerce." *Tennessee Wine &*

*Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2459 (2019). "[A] state law that has the

'practical effect' of regulating commerce occurring wholly outside that State's borders is invalid

under the Commerce Clause." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 332 (1989).

42.    Steward's hospitals and providers are not limited to Massachusetts. Doe alleges

"Steward operates an additional 29 hospitals in eight other states: Florida (8), Texas (6), Utah

(5), Arizona (4), Pennsylvania (2), Ohio (2), Arkansas (1) and Louisiana (1)." Complaint, ¶ 21.

Indeed, Steward's websites are not limited to patients or providers in Massachusetts. Doe's state law claims concerning Steward's websites used by patients outside Massachusetts violates the federal dormant Commerce Clause, and at a minimum raises a colorable federal defense. *See UPMC*, 2020 WL 4381675, at *7 (finding colorable dormant Commerce Clause defense under similar circumstances).

## **PROCEDURAL REQUIREMENTS**

43. All of the procedural requirements for removal under 28 U.S.C. § 1446 are satisfied here.

44. Steward is filing this Notice of Removal within 30 days after Doe purportedly served Steward on March 6, 2023. 28 U.S.C. § 1446(b).

45. This Court is the corresponding federal court for the Suffolk County Superior Court of the Commonwealth of Massachusetts, where the suit was originally filed. Venue is therefore proper under 28 U.S.C. §§ 101 and 1441(a); *see also* L.R. 40.1(a), (d).

46. Steward has attached a copy of the Complaint and all other publicly available filings from the state court docket as Exhibits 1-7.

47. Upon filing this Notice, Steward will promptly "give written notice thereof to all adverse parties," and will "file a copy of the notice with the clerk" of the Suffolk County Superior Court. 28 U.S.C. § 1446(d).

WHEREFORE, Notice is hereby given that this action is removed from the Suffolk County Superior Court for the Commonwealth of Massachusetts to the United States District Court for the District of Massachusetts.

Date Filed 4/3/2023 4:30 PM
Superior Court - Suffolk
Docket Number 2384CV00174

Case 1:23-cv-10711-AK   Document 9   Filed 04/25/23   Page 59 of 59
Case 1:23-cv-10711-AK   Document 1   Filed 04/03/23   Page 16 of 16

Respectfully submitted,

STEWARD HEALTH CARE SYSTEM LLC,

By its attorneys,


/s/ Ian Pinta
Howard M. Cooper (BBO No. 543842)
Ingrid S. Martin (BBO No. 653632)
Ian J. Pinta (BBO No. 667812)
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA 02110
617-720-2626
hcooper@toddweld.com
ipinta@toddweld.com

Dated: April 3, 2023


## CERTIFICATE OF SERVICE

I, Ian J. Pinta, do hereby certify that on this 3rd day of April, 2023, I caused the foregoing document to be filed through the ECF system and to be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and to be served via electronic mail and overnight mail upon counsel of record for the Plaintiff.


/s/ Ian Pinta
Ian J. Pinta

Dated: April 3, 2023